# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                    NEWS RELEASE #032

FROM: CLERK OF SUPREME COURT OF LOUISIANA


The Opinions handed down on the **30th day of June, 2015**, are as follows:


**BY JOHNSON, C.J.**:


2014-C -2483      TRACY RAY LOMONT v. MICHELLE MYER-BENNETT AND XYZ INSURANCE
                  COMPANY (Parish of Jefferson)

                  Because we find plaintiff filed suit within one year of
                  discovering defendant's malpractice, we hold the lower courts
                  erred in sustaining defendant's exception of peremption.
                  Reversed and remanded for further proceedings.
                  REVERSED AND REMANDED.

                  GUIDRY, J., concurs.

SUPREME COURT OF LOUISIANA

NO. 2014-C-2483

TRACY RAY LOMONT

VERSUS

MICHELLE MYER-BENNETT AND XYZ INSURANCE COMPANY

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON

**JOHNSON, Chief Justice**

In this legal malpractice case, defendant, Michelle Myer-Bennett, filed a peremptory exception of peremption asserting plaintiff, Tracy Ray Lomont, filed her malpractice claim beyond the three-year peremptive period set forth in La. R.S. 9:5605. Ms. Lomont opposed the exception, arguing the peremptive period should not apply because Ms. Myer-Bennett engaged in fraudulent behavior which prevents application of the peremptive period pursuant to La. R.S. 9:5605(E). The district court sustained the exception of peremption and the court of appeal affirmed. We granted Ms. Lomont's writ application to determine the correctness of the lower courts' rulings.

### FACTS AND PROCEDURAL HISTORY

Ms. Myer-Bennett was hired by Ms. Lomont to represent her in a divorce and related domestic matters, which included partitioning the community property. Ms. Lomont and her ex-husband, John Lomont, agreed to a partial partition of the community property whereby Ms. Lomont was provided full ownership of the family home in Jefferson Parish, and Mr. Lomont was provided full ownership of his business. Ms. Myer-Bennett drafted a written agreement to this effect entitled "Partial Partition of Community Property Agreement between Tracy Lomont and John

1

Lomont." The agreement was executed by the parties on September 8, 2008, but Ms. Myer-Bennett failed to record it in the mortgage and conveyance records in Jefferson Parish.

On February 4, 2009, Citibank obtained a default judgment against John Lomont in the amount of $26,052.17 on a delinquent account. On February 20, 2009, Citibank recorded the judgment in the mortgage records in Jefferson Parish as a lien against the home.

In September 2010, Ms. Lomont attempted to refinance the mortgage on the home and learned from the bank that the settlement agreement, giving her full ownership of the home, was never recorded in the mortgage and conveyance records. Ms. Lomont contacted Ms. Myer-Bennett to advise her of the problem. According to Ms. Myer-Bennett, because it was her standard practice to record such documents, she initially believed Ms. Lomont was given inaccurate information by the bank. However, upon investigation, Ms. Myer-Bennett discovered that she had not recorded the agreement. Ms. Myer-Bennett recorded the agreement the next day, September 30, 2010.

In December 2010, Ms. Lomont was notified that her application to refinance the loan was denied because of Citibank's lien on the property. Ms. Lomont again contacted Ms. Myer-Bennett. Prior to this time, neither Ms. Lomont nor Ms. Myer-Bennett was aware of the Citibank lien. According to Ms. Myer-Bennett, once she became aware of the Citibank lien she discussed with Ms. Lomont the fact she had committed malpractice and gave Ms. Lomont several options to proceed, including hiring another lawyer to sue her for malpractice or allowing Ms. Myer-Bennett to file suit against John Lomont and/or Citibank to have the lien removed. Ms. Myer-Bennett asserts Ms. Lomont chose not to pursue a malpractice action, but wanted defendant to fix the problem. Ms. Lomont denied Ms. Myer-Bennett ever notified her

2

she had committed malpractice. Similarly, Ms. Lomont denied being advised she could obtain other counsel and sue Ms. Myer-Bennett for malpractice. Ms. Lomont asserts Ms. Myer-Bennett never mentioned malpractice in December 2010, but simply advised she would have the Citibank lien removed from the property by filing lawsuits against John Lomont and Citibank. Ms. Lomont further asserts she was asked to come to Ms. Myer-Bennett's office to sign the pleadings against Citibank and John Lomont, which she did on June 20, 2011. Ms. Myer-Bennett also enlisted her help in an effort to serve John Lomont with the lawsuit. Ms. Lomont alleges she repeatedly called Ms. Myer-Bennett to inquire about the status of the lawsuits and was assured the lawsuits were actively being pursued and the lien would be removed in due course.

Ms. Myer-Bennett admits no lawsuits were ever filed against John Lomont and/or Citibank. Ms. Myer-Bennett admits a draft lawsuit was prepared, which was reviewed by Ms. Lomont, but she denies Ms. Lomont signed the lawsuit or verification because it was not complete. Ms. Myer-Bennett could not produce a copy of the drafted lawsuit in response to a subpoena duces tecum from Ms. Lomont, nor did she submit a copy of the lawsuit into evidence. Ms. Myer-Bennett testified she did not file the lawsuit because she discovered in March 2012 she had an unwaivable conflict of interest and could no longer represent Ms. Lomont in an effort to have the lien removed. Ms. Myer-Bennett met with Ms. Lomont and advised her of the conflict and memorialized this conversation in an April 12, 2012, letter to Ms. Lomont stating:

> As we discussed, on or about December 2010, you and John executed a Partition Agreement wherein he assumed any liabilities associated with his business. Unfortunately, however, I did not file the Partition Agreement with the Mortgage Office, and it needed to be filed with the Mortgage Office in order for it to have an effect on third parties (i.e., people other than you and John).
>
> As a result of my failure to file the Partition Agreement with the

Mortgage Office, a credit card company was able to obtain a lien against your property. *I would love to represent you in an effort to get the lien removed, but I have an unwaivable conflict of interest that prohibits me from doing so. Therefore, I urge you to obtain independent counsel to assist you in that regard.* (Emphasis added).

Ms. Myer-Bennett provided Ms. Lomont with a list of suggested attorneys who could assist her with having the lien removed. Ms. Lomont subsequently met with one of the suggested attorneys, Debra Kesler, on June 28, 2012, who advised her the sole cause of action available was a malpractice suit against Ms. Myer-Bennett. Ms. Lomont testified she was "shocked" to learn of the malpractice because she had been led to believe the lien could be successfully removed by filing a lawsuit.

Ms. Lomont filed this malpractice action against Ms. Myer-Bennett on July 12, 2012, alleging her attorney committed legal malpractice by failing to record the community property settlement which gave her full ownership of the home, thus allowing a third-party creditor to file a lien against her home for her ex-husband's debt. Ms. Myer-Bennett filed an exception of peremption asserting more than three years had passed since the date of the alleged act, omission, or neglect upon which Ms. Lomont's claims were based and, thus, Ms. Lomont's claims were perempted under La. R.S. 9:5605. Ms. Lomont filed a supplemental and amending petition alleging defendant acted fraudulently in misrepresenting and/or suppressing the truth regarding the malpractice she committed. Ms. Lomont further alleged because of defendant's fraudulent acts, her claim fell under the exception set forth in La. R.S. 9:5605(E) and was not perempted. In a second supplemental and amending petition, Ms. Lomont detailed the alleged specific fraudulent acts.[1]

An evidentiary hearing was held on Ms. Myer-Bennett's exception of peremption. The parties submitted evidence and the district court heard testimony

---

[1] Our review of the petitions in the record confirm Ms. Lomont particularly alleged the circumstances constituting Ms. Myer-Bennett's fraud, thus satisfying the requirement of La. C.C.P. art. 856. That article states, in pertinent part: "In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity."

4

from Ms. Myer-Bennett and Ms. Lomont. Following the hearing, the district court sustained the exception. Relying on a recent Fifth Circuit case, *Garner v. Lizana*, 13-427 (La App. 5 Cir. 12/30/13), 131 So. 3d 1105, *writ denied*, 14-0208 (La. 4/4/14), 135 So. 3d 1183, the court first held post-malpractice acts could be considered in determining whether the fraud exception in La. R.S. 9:5605(E) should be applied. However, the court specifically found Ms. Myer-Bennett's actions after the discovery of her malpractice did not amount to fraud. Based on the evidence, the district court found defendant was "honestly trying to fix a mistake that she had caused" and, thus, did not have the requisite intent to commit fraud.

On appeal, Ms. Lomont contended the allegations of fraud in her petition should be accepted as true and were sufficient to prevent application of the three-year peremptive period in La. R.S. 9:5605(A). Ms. Lomont also argued the district court erred in failing to find defendant's conduct constituted fraud. The court of appeal affirmed.[2] Because evidence was presented at the hearing on the exception of peremption, the court of appeal held the presumption that the allegations in Ms. Lomont's petition were true did not apply.[3] The court further found no manifest error in the district court's ruling. The court explained:

> Defendant testified that she admitted her mistake in failing to file the partition agreement to Ms. Lomont in December 2010. Defendant further stated that she offered to help Ms. Lomont in getting the lien removed and everything she did was in an effort to "fix the problem" she
> had created. When findings are based on determinations regarding the credibility of witnesses, great deference is given to the trier of fact because only the fact finder is cognizant of the variations in demeanor and tone of voice that bears so heavily on the listener's understanding and belief in what is said. While some of Defendant's representations to Ms. Lomont regarding the method by which the lien could have been removed may have been grossly negligent, we cannot say the trial court was manifestly erroneous in finding Defendant's conduct was not

---

[2] *Lomont v. Myer-Bennett*, 14-351 (La. App. 5 Cir. 10/29/14), – So. 3d –.

[3] *Lomont*, at *10.

fraudulent.[4]

Ms. Lomont filed a writ application with this Court which we granted.[5]

## DISCUSSION

The time limits to file a legal malpractice action are set forth in La. R.S. 9:5605, which provides in pertinent part:

A. **No action for damages against any attorney** at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, **arising out of an engagement to provide legal services shall be brought unless filed** in a court of competent jurisdiction and proper venue **within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.**

B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. **The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods** within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

\*\*\*

E. **The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.**

(Emphasis added). In this case there is no dispute the act of malpractice was Ms. Myer-Bennett's failure to record the settlement agreement in the public records prior

---

[4] *Lomont,* at \*11-12.

[5] *Lomont v. Myer-Bennett*, 14-2483 (La. 2/27/15), 159 So. 3d 1062.

to February 20, 2009, the date the Citibank lien was recorded against Ms. Lomont's property. Thus, under the clear wording of La. R.S. 9:5605(A) and (B), Ms. Lomont's suit, filed on July 12, 2012, more than three years after the act of malpractice, would be perempted. Here, however, Ms. Lomont has asserted the peremptive period is not applicable based on the fraud exception set forth in La. R.S. 9:5605(E).

The objection of peremption is raised by the peremptory exception. La. C.C.P. art. 927(A)(2). "Peremption has been likened to prescription; namely, it is prescription that is not subject to interruption or suspension." *Rando v. Anco Insulations, Inc.*, 08-1163 (La. 5/22/09), 16 So. 3d 1065, 1082. Thus, the rules governing the burden of proof as to prescription also apply to peremption. *Id.* Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. *Id.* But, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. *Id.* Ms. Lomont's *First Supplemental and Amended Petition for Damages for Legal Malpractice* affirmatively alleges her petition for damages was not time-barred under La. R.S. 9:5605(A) because defendant committed fraud and thus the action falls under the fraud exception of La. R.S. 9:5605(E). Additionally, Ms. Lomont filed a *Second Amended and Supplemental Petition for Damages for Legal Malpractice* which affirmatively set forth detailed factual allegations of fraud and asserted that defendant's fraudulent actions rendered the peremptive period in La. R.S. 9:5605(A) inapplicable. Based on these allegations, it appears plaintiff made a *prima facie* showing that her claims were timely filed, leaving the burden of proving peremption with the defendant.

At a hearing on a peremptory exception of prescription pleaded prior to trial, evidence may be introduced to support or controvert the exception. La. C.C.P. art. 931. In the absence of evidence, an exception of peremption must be decided upon

7

the facts alleged in the petition with all of the allegations accepted as true. *Cichirillo v. Avondale Industries, Inc.*, 04-2894 (La. 11/29/05), 917 So. 2d 424, 428. However, when evidence is introduced, the court is not bound to accept plaintiff's allegations as true. *See Denoux v. Vessel Management Services, Inc.*, 07-2143 (La. 5/21/08), 983 So. 2d 84, 88; *Younger v. Marshall Industries, Inc.*, 618 So. 2d 866, 871 (La. 1993); *Ansardi v. Louisiana Citizens Property Ins.*, 11-1717 (La. App. 4 Cir. 3/1/13), 111 So. 3d 460, 472, *writ denied*, 13-0697 (La. 5/17/13), 118 So. 3d 380. If evidence is introduced at the hearing on the peremptory exception of peremption, the district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Rando*, 16 So. 3d at 1082. If those findings are reasonable in light of the record reviewed in its entirety, an appellate court cannot reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

To satisfy her burden of proving Ms. Lomont's claim is perempted, Ms. Myer-Bennett was required to prove La. R.S. 9:5605(E) is not applicable. We begin our analysis mindful that "peremptive statutes are strictly construed against peremption and in favor of the claim. Of the possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted." *Id.* at 1083.

### Meaning of Fraud under La. R.S. 9:5605(E)

To determine the applicability of La. R.S. 9:5605(E), we must decide whether Ms. Myer-Bennett's actions amounted to fraud pursuant to La. C.C. art. 1953, thus invoking the fraud exception in Subsection (E). However, before we can make that specific determination, we must first consider whether post-malpractice fraudulent concealment can constitute fraud as contemplated by La. R.S. 9:5605(E), or whether the act of malpractice itself must be fraudulent to apply the exception in La. R.S.

8

9:5605(E). Because resolution of this particular issue involves the correct interpretation of a statute, it is a question of law, and reviewed by this court under a de novo standard of review. *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-0193 (La. 1/19/11), 56 So. 3d 181, 187. After our review, we "render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state." *Id.* (quoting *Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 06-0582 (La. 11/29/06), 943 So. 2d 1037, 1045).

The district and appellate courts' rulings that post-malpractice fraudulent acts of concealment can bar application of the three-year peremptive period under the fraud exception in La. R.S. 9:5605(E) were based on the appellate court's earlier decision in *Garner v. Lizana*, *supra*. In *Garner*, the court acknowledged Subsection (E) had been interpreted by many appellate courts to apply only to the act of malpractice itself, not to allegations of fraudulent concealment of the malpractice. 131 So. 3d at 1111. However, noting the absence of an opinion from this court on the issue, the *Garner* court factually distinguished these other appellate cases. *Id.* at 1111-12. The court found the particular allegations in Garner's petition regarding concealment of malpractice fell under the fraud exception set forth in La. R.S. 9:5605(E). *Id.* at 1113.

Other than *Garner*, our courts of appeal have largely rejected the idea that the concealment of legal malpractice constitutes fraud under La. R.S. 9:5605(E), instead holding the fraud exception applicable only in cases where the fraudulent act itself constitutes the malpractice. *See, e.g.*, *Carriere v. Bodenheimer, Jones, Szwak & Winchell, L.L.P.*, 47,186 (La. App. 2 Cir. 8/22/12), 120 So. 3d 281; *Broadscape.com, Inc. v. Matthews*, 07-0545 (La. App. 4 Cir. 3/5/08), 980 So. 2d 140; *Brumfield v. McElwee*, 07-0548 (La. App. 4 Cir. 1/16/08), 976 So. 2d 234; *Smith v. Slattery*,

38,693 (La. App. 2 Cir. 6/23/04), 877 So. 2d 244, writ denied, 04-1860 (La. 10/29/04), 885 So. 2d 592; *Atkinson v. LeBlanc*, 03-365 (La. App. 5 Cir. 10/15/03), 860 So. 2d 60. However, we find no valid basis to support and uphold this jurisprudential rule. Although each case must be judged on its particular facts to determine whether the attorney's actions are sufficient to invoke La. R.S. 9:5605(E), to the extent these cases hold an attorney's post-malpractice actions consisting of fraudulent concealment cannot amount to fraud within the meaning of Subsection (E), they are overruled.

The language of La. R.S. 9:5605(E) excepts the peremptive period "in cases of fraud, as defined by La. C.C. art. 1953," with no additional restrictions or limitations. La. C.C. art 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Thus, under the clear wording of the statute and the Code article, **any** action consisting of "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" will prohibit application of the peremptive period. Concealment of malpractice to avoid a malpractice claim conforms to this definition. It would be absurd to interpret the statute to exclude fraudulent concealment of the malpractice. There is no support for an interpretation that would allow attorneys to engage in concealment of malpractice until the three-year peremptive period has expired. As this court noted in *Borel v. Young*, albeit in dictum, "[p]resumably, by exempting claims of fraud, the legislature intended to restore the third category of contra non valentem **so as to prevent a potential defendant from benefitting from the effects of peremption by intentionally concealing his or her wrongdoing**." 07-0419 (La. 11/27/07), 989 So. 2d 42, *on reh'g*, (7/1/08), 989 So. 2d at 61 n. 3 (emphasis added). The basic rule

governing statutory interpretation is stated in Louisiana Civil Code article 9: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." Applying the clear and unambiguous language of the statute, we hold allegations of misrepresentation, suppression or concealment of malpractice can constitute fraud within the meaning of La. R.S. 9:5605(E). Thus, the lower courts correctly considered Ms. Lomont's allegations of post-malpractice concealment in determining whether the fraud exception in La. R.S. 9:5605(E) should be applied.

### Factual Finding of Fraud

We now examine whether Ms. Myer-Bennett's conduct constituted fraud. Fraud is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" and can result from silence or inaction. La. C.C. art. 1953. To find fraud from silence, there must be a duty to speak. *Greene v. Gulf Coast Bank*, 593 So. 2d 630, 632 (La. 1992). "Louisiana law recognizes that the refusal to speak, in the face of an obligation to do so, is not merely unfair but is fraudulent." *Bunge Corporation v. GATX Corporation*, 557 So. 2d 1376, 1383 (La. 1990). There are two elements necessary to prove legal fraud: an intent to defraud and a resulting damage. *Anderson v. Moreno's Air Conditioning, Inc.*, 14-27 (La. App. 3 Cir. 6/4/14) 140 So. 3d 841, 852, *writ denied*, 14-1392 (La. 10/3/14), 149 So. 3d 800; *Shields v. Parish of Jefferson*, 13-481 (La. App. 5 Cir. 12/27/13), 131 So. 3d 1048, 1052; *Mooers v. Sosa*, 01-286 (La. App. 5 Cir. 9/25/01), 798 So. 2d 200, 207; *Williamson v. Haynes Best Western of Alexandria*, 95-1725 (La. App. 4 Cir. 1/29/97), 688 So. 2d 1201, 1239, *writ denied*, 97-1145 (La. 6/20/97), 695 So. 2d 1355; *First Downtown Dev. v. Cimochowski*, 613 So. 2d 671, 677 (La. App. 2 Cir. 1993), *writ denied*, 615

So. 2d 340 (La. 1993). Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957; *Shelton v. Standard/700 Associates*, 01-0587 (La. 10/16/01), 798 So. 2d 60, 64. Circumstantial evidence, including highly suspicious facts and circumstances, may be considered in determining whether fraud has been committed. *See Sun Drilling Products Corp. v. Rayborn*, 00-1884 (La. App. 4 Cir. 10/3/01), 798 So. 2d 1141, 1153, *writ denied*, 01-2939 (La. 1/25/02), 807 So. 2d 840; *Williamson*, 688 So. 2d at 1239; Comment (b), La. C.C. art. 1957.

Because Ms. Myer-Bennett had the burden of proving Ms. Lomont's claim is perempted, Ms. Myer-Bennett necessarily had the burden of proving she did not commit fraud as alleged by Ms. Lomont. At the evidentiary hearing on the exception of peremption, the district court heard testimony from Ms. Myer-Bennett and Ms. Lomont. Ms. Myer-Bennett's relevant testimony is summarized below:

- Ms. Myer-Bennett has been a practicing attorney since 1994.

- Ms. Myer-Bennett has known Ms. Lomont since childhood. And, Ms. Lomont has worked as an assistant for Ms. Myer-Bennett's dentist for twenty-five years, so they have maintained a casual friendship.

- Ms. Lomont called her in September 2010 advising she was trying to refinance her home but the finance company could not find the community property partition in the mortgage and conveyance records. Ms. Myer-Bennett assured Ms. Lomont it was filed because that is her standard operating procedure. However, when Ms. Myer-Bennett looked at her records, she realized she had not filed it.

- Ms. Myer-Bennett admitted she committed malpractice by not recording the community property settlement agreement in a timely fashion.

- Ms. Myer-Bennett testified she first realized she committed malpractice after the September 2010 call from Ms. Lomont when she checked her records and realized the community property settlement was not filed. She did not discuss malpractice with Ms. Lomont at that time because no one was aware of the lien, so Ms. Myer-Bennett did not think the failure to file the agreement had any negative effect.

- Ms. Lomont called her in December 2010 and advised the finance company found a lien on the property. During this conversation Ms. Myer-Bennett did discuss malpractice because an issue now existed. Ms. Myer-Bennett admitted

to Ms. Lomont it was her fault and she committed malpractice. Ms. Myer-Bennett told Ms. Lomont she had several options - hire another attorney and sue Ms. Myer-Bennett for malpractice; and/or sue John Lomont for indemnification; or allow Ms. Myer-Bennett to negotiate with Citibank. Ms. Myer-Bennett basically wanted to "fix the problem she had caused."

- Ms. Lomont immediately responded she did not want to sue for malpractice and she did not want to hire another attorney; Ms. Lomont wanted her to fix the problem. Ms. Myer-Bennett did not follow-up this conversation with a written letter to Ms. Lomont confirming she was advised about the malpractice and her right to obtain another lawyer.

- Ms. Myer-Bennett sent an internal email to herself on December 9, 2010, which she claims documents this conversation. The email was sent from Ms. Myer-Bennett to "greedymyer@yahoo.com," an account Ms. Myer-Bennett keeps for billing purposes. Ms. Myer-Bennett testified whenever she does work on a case, she sends herself an email to this particular Yahoo account so she can keep track of the work for billing purposes.[6]

- Ms. Myer-Bennett proceeded to try to "fix the problem." She first tried to negotiate with Citibank. She exchanged emails with Citibank's attorney and they discussed settlement on the phone several times. Citibank also requested a hardship statement and financial statement from Ms. Lomont. Although Citibank seemed receptive for a while, they were never able to reach a settlement. After negotiation with Citibank failed, the Lomonts contemplated bankruptcy and met with a bankruptcy lawyer, but they decided not to pursue that course of action.

- Ms. Myer-Bennett next planned to file suit against John Lomont based on the indemnification provision in the community property settlement agreement. She prepared a draft of a lawsuit, and had several conversations with Ms. Lomont about the lawsuit. At one point it appeared John Lomont was going to accept service and consent to the judgment.

- Ms. Myer-Bennett did not remember calling Ms. Lomont or asking her law clerk, Megan, to call Ms. Lomont into the office to sign the lawsuit. She did recall Ms. Lomont coming to her office and showing Ms. Lomont the draft of a lawsuit. However, the lawsuit was not complete and she never asked Ms. Lomont to sign an affidavit or verification because her practice is not to have clients sign a verification until the lawsuit is complete and she gets full approval.

- Ms. Myer-Bennett never told Ms. Lomont she had filed the lawsuit against John Lomont or Citibank.

- When questioned why her office sought information about John Lomont's

---

[6] A copy of the email was admitted into evidence. A dispute has arisen in this court regarding whether some of the email content was added at a later date. The issue was not raised in the district court. Ms. Lomont was not copied on the original email and there was no testimony or computer forensic evidence submitted at the hearing regarding the validity of the contents of the email. Thus, we decline to directly address this argument because no findings were made by the lower courts.

address for service when suit was never filed, Ms. Myer-Bennett testified service on John Lomont was an "ongoing thing." Ms. Myer-Bennett explained she first needed an address in general for the lawsuit because there was some discrepancy about which address to use. She further explained John Lomont had agreed to accept service at one point and he did not want to be served. Although there was a lot of "back and forth," they were unable to get John Lomont to commit to do that.

- Ms. Myer-Bennett never sent a letter to Ms. Lomont advising her of the status of that proposed lawsuit.

- Ms. Myer-Bennett was unable to produce a copy of the draft lawsuit.

- Ms. Myer-Bennett did not file the lawsuit because she met with her ex-husband, attorney Jeff Bennett, for advice on how to proceed and was advised by him that she could not pursue the matter because she had a non-waivable conflict of interest.

- Ms. Myer-Bennett testified she was not aware she had a conflict of interest in continuing to represent Ms. Lomont until she spoke with Jeff Bennett.

- In March 2012, following her meeting with Jeff Bennett, Ms. Myer-Bennett either called or texted Ms. Lomont about the conflict and asked her to come to the office to discuss the issue. There was no mention of malpractice at this meeting because Ms. Lomont had made clear in December 2010 she did not want to pursue a legal malpractice action.

- Following this meeting, Ms. Myer-Bennett sent a letter to Ms. Lomont dated April 2, 2012, confirming the conversation.

- Ms. Myer-Bennett included with the letter a list of attorneys who could help Ms. Lomont "get the lien removed."

- The April 2, 2012, letter was the only document Ms. Myer-Bennett ever wrote to Ms. Lomont. All other communication was via telephone or text messaging.

- In response to questions regarding the validity of any lawsuit against Mr. Lomont or Citibank, Ms. Myer-Bennett still believed at the time of the hearing a lawsuit against Mr. Lomont would be successful. It would require obtaining a judgment against Mr. Lomont and Mr. Lomont paying off the amount of the lien. She did not think the lien could be removed solely by suing Citibank. She did not tell Ms. Lomont she had no claim against Citibank because she was not sure at the time.

Ms. Lomont's relevant testimony at the evidentiary hearing is summarized below:

- Ms. Lomont discovered the lien on her property on December 9, 2010, when she was advised by the bank that her refinance loan could not be approved because of the lien.

- Ms. Lomont spoke with Ms. Myer-Bennett about the lien, but denies Ms. Myer-Bennett stated she committed malpractice.

14

- Ms. Myer-Bennett never advised Ms. Lomont of her rights regarding a legal malpractice claim against Ms. Myer-Bennett.

- Ms. Myer-Bennett advised she did not timely file the settlement agreement and would try to get the lien removed. Ms. Myer-Bennett said it was something she could take care of and Ms. Lomont had no reason to doubt it.

- Ms. Myer-Bennett called her to come to the office on June 20, 2011, at which time she advised Ms. Lomont she had drawn up a lawsuit against John Lomont and Citibank. The purpose of that meeting was for Ms. Lomont to sign the lawsuit.

- Ms. Lomont communicated back and forth with Ms. Myer-Bennett's law clerk, Megan, about service on John Lomont. Ms. Lomont was told they were having trouble serving John Lomont and they were looking into hiring a private detective to obtain service.

- Ms. Lomont received the April 2, 2012, letter from Ms. Myer-Bennett with an attached list of attorneys. This is the only letter she has ever received from Ms. Myer-Bennett.

- Ms. Lomont met with one of the suggested attorneys, Debra Kesler, on June 28, 2012. At that time, Ms. Lomont learned that a lawsuit was never filed against John Lomont or Citibank. Prior to that time she believed Ms. Myer-Bennett had filed the lawsuits and was proceeding to remove the lien.

- Ms. Lomont further learned from Ms. Kesler the judgment could not be removed by a lawsuit against John Lomont and Citibank, and the only course of action was a malpractice lawsuit against Ms. Myer-Bennett. This was the first time Ms. Lomont had any idea she had a claim against Ms. Myer-Bennett and she was "shocked."

After considering the testimony and other evidence, the district court found Ms. Myer-Bennett's actions did not amount to fraud. The court reasoned:

> In her testimony, Ms. Myer-Bennett stated that as soon as she realized she had made a mistake, she advised Ms. Lomont that she could retain an attorney to sue her. She also advised her that she could try to remove the lien by suing Citibank and Mr. Lomont. While Ms. Lomont argues that this was all an effort to trick her into allowing the peremptive period to pass, this court finds that this was not the case. Instead, this court is inclined to believe that Ms. Myer-Bennett was honestly trying to fix a mistake that she had caused. As a result, this court cannot find that her actions amounted to fraud, because Ms. Myer-Bennett did not have the requisite intent of Civil Code Article 1953.

We are cognizant our review of the district court's finding on this issue is subject to the manifest error standard of review. *Rando*, 16 So. 3d at 1082; *see also*

15

*Lovell v. Blazer Boats Inc.*, 11-1666 (La. App. 1 Cir. 10/24/12), 104 So. 3d 549, 558; *Joyner v. Liprie*, 44,852 (La. App. 2 Cir. 1/29/10), 33 So. 3d 242, 253, *writ denied*, 10-0723 (La. 9/17/10), 45 So. 3d 1043. As a reviewing court, we cannot merely review the record for some evidence that supports the lower court's findings. *Read v. Willwoods Cmty.*, 14-1475, *3 (La. 3/17/15), – So. 3d –; *Stobart v. State through Dept. of Transp. and Development*, 617 So. 2d 880, 882 (La. 1993). Rather, we must review the entire record and determine whether the district court's finding was clearly wrong or manifestly erroneous. *Id.* Under the manifest error standard, in order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Bonin v. Ferrellgas*, 03-3024 (La. 7/2/04), 877 So. 2d 89, 94–95; *Stobart*, 617 So. 2d at 882.

Much of the testimony of Ms. Myer-Bennett and Ms. Lomont is contradictory. We recognize credibility determinations are within the district court's discretion and should not be disturbed upon review where conflict exists in the testimony absent a determination that the district court abused its discretion. *Folse v. Folse*, 98-1976 (La. 6/29/99), 738 So. 2d 1040, 1048-49; *Stobart*, 617 So. 2d at 882. However, "where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness *even in a finding purportedly based upon a credibility determination*." *Stobart*, 617 So. 2d at 882 (emphasis added). Thus, although we are required to operate under a high standard of review, we are not "required to rubberstamp with approval any and all factual determinations by the trial court." A. Tate, *"Manifest Error"-Further observations on appellate review of facts in*

*Louisiana civil cases*, 22 La. L.Rev. 605, 611 (1962). Our review of the entire record compels us to conclude no reasonable factual basis exists on which the district court could have concluded Ms. Myer-Bennett's actions were not fraudulent. We find Ms. Myer-Bennett's story so implausible that it was clearly wrong for the district court to give it credit.

An attorney has an affirmative duty under Rule 1.4 of the Rules of Professional Conduct to "keep his client reasonably informed about the status of the matter" and "give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which there are to be pursued." The record is devoid of proof that Ms. Myer-Bennett fulfilled her "duty to speak" under Rule 1.4. Ms. Myer-Bennett worked as an attorney for more than fifteen years at the time of the malpractice. To accept Ms. Myer-Bennett's story, we would first have to believe an attorney with considerable legal experience would admit to the client she committed malpractice, advise the client of her right to obtain independent counsel to pursue a malpractice claim, and accept the client's decision not to pursue a malpractice claim without confirming any of these details in writing or providing written documentation to her file. Moreover, fifteen months passed between Ms. Myer-Bennett's realization she committed malpractice and when Ms. Myer-Bennett discontinued her representation of Ms. Lomont. Ms. Myer-Bennett claims she worked during this period of time to "fix the problem," yet she failed to produce any evidence of this alleged work. Notably, this alleged work included extended negotiations and dealings with counsel for Citibank, but Ms. Myer-Bennett did not produce any letters or other documents as evidence of these negotiations. Ms. Myer-Bennett would also have us believe she worked on drafting a lawsuit against John Lomont over this course of time, encountering repeated issues relative to service of process on Mr. Lomont, yet Ms. Myer-Bennett could not produce a copy of the

17

draft lawsuit, nor does the record contain documentation of the service complications. Thus, although Ms. Myer-Bennett attempts to justify her actions and continued representation of Ms. Lomont by claiming a lawsuit against John Lomont could "fix the problem" and claiming she worked on fixing the problem during the time she continued to represent Ms. Lomont because Ms. Lomont chose not to pursue a legal malpractice claim, there is a complete lack of evidence to support any of her claims. The only documentation Ms. Myer-Bennett submitted was a single email sent to herself on December 9, 2010, purportedly confirming a conversation wherein Ms. Lomont was advised of the malpractice and declined to pursue a malpractice action. We find this email entirely self-serving. The email admittedly was sent by Ms. Myer-Bennett only to herself, with no confirmation of the alleged conversation was sent to Ms. Lomont or documented in her file. Although the purpose of sending the email to herself was purportedly to document work done on the file, Ms. Myer-Bennett produced no evidence of other emails to herself documenting any work done on behalf of Ms. Lomont. The fact that this is the only written documentation of her actions is self-serving and suspect.

Finally, we find it incredible that Ms. Myer-Bennett would claim she was completely unaware of the conflict of interest during these fifteen months but, conveniently, learned of the unwaivable conflict shortly after the three-year peremptive period had expired. Ms. Myer-Bennett then took immediate steps to advise Ms. Lomont *in writing* of the unwaivable conflict, suggest a list of attorneys as independent counsel, and discontinue representation.

Specific intent to deceive is a necessary element of fraud, and fraud cannot be based on mistake or negligence, regardless how great. *Sanga v. Perdomo*, 14-609, *6 (La. App. 5 Cir. 12/30/14), — So. 3d —; *Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 11-0072 (La. App. 1 Cir. 8/17/11), 76 So. 3d 502, 509, *writ denied*,

18

11-2021 (La. 11/18/11) 75 So. 3d 464. In considering fraud, we focus on Ms. Myer-Bennett's conduct and consider whether her misrepresentations were deliberate and "knowing" and whether evidence of the misrepresentations was concealed. *See, e.g.*, *Stutts v. Melton*, 13-0557 (La. 10/15/13), 130 So. 3d 808, 814 (wherein this court affirmed a finding of fraud as defined by La. C.C. art. 1953 against the builder of a house who made a knowing misrepresentation that the roof was free from defects, and then covered up evidence of the defect). *See also Ducote v. Perry's Auto World, Inc.*, 98-1972 (La. App. 1 Cir. 11/5/99), 745 So. 2d 229, 231 (wherein the court affirmed a finding of fraud under La. C.C. art. 1953 against a car dealership where the dealer had knowledge of a defective carburetor, but told the buyer the car was "in good working condition"). Considering the facts and circumstances of this case, there is no other plausible explanation for Ms. Myer-Bennett's actions other than she intended to defraud Ms. Lomont by lulling her into inaction. It is the total absence of evidence in the record which compels our decision. Under the facts of this case, we do not find Ms. Myer-Bennett satisfied her burden of proof by her self-serving testimony alone. Ms. Myer-Bennett deliberately hid the truth regarding her ability to have the Citibank lien removed by giving Ms. Lomont assurances that lawsuits were filed and proceeding. Ms. Myer-Bennett waited until the peremptive period for legal malpractice had presumably expired before disclosing the unwaivable conflict of interest and discontinuing her representation of Ms. Lomont. To her detriment, unaware she should have pursued a legal malpractice claim against Ms. Myer-Bennett, Ms. Lomont believed lawsuits against John Lomont and/or Citibank were filed and would successfully remove the lien. Ms. Myer-Bennett's actions demonstrate her intent to deceive Ms. Lomont thereby gaining an advantage by avoiding a malpractice suit. Thus, Ms. Myer-Bennett's actions fit squarely within the definition of fraud in La. C.C. art. 1953.

19

**Time Limitation in Legal Malpractice cases when La. R.S. 9:5605(E) Applies**

Having established Ms. Myer-Bennett committed fraud within the meaning of La. R.S. 9:5605(E), we must still determine whether Ms. Lomont's suit was timely filed. La. R.S. 9:5605(E) instructs in cases of fraud "the peremptive period provided in Subsection A of this Section shall not apply." Most of our appellate courts have held the fraud exception in Subsection (E) applies only to the three-year peremptive period, and legal malpractice plaintiffs are still required to file suit within one year of discovery of the fraud under Subsection (A). *See*, *e.g.*, *Zeno v. Alex*, 11-1240 (La. App. 3 Cir. 4/4/12), 89 So. 3d 1223, 1226 ("Subsection (E) of the statute provides that the three-year peremptive period of Subsection (A) does not apply in cases of fraud, but the one-year peremptive period, from the date of the discovery of the fraud, does apply."); *Orea v. Bryant*, 43,229 (La. App. 2 Cir. 4/2/08), 979 So. 2d 687, 690 ("There is not a hard and fast three-year limit on bringing the action for fraud, but there is a requirement that the action for fraud be brought within one year of discovery of the allegedly fraudulent acts."); *Granger v. Middleton*, 06-1351 (La. App. 3 Cir. 2/7/07), 948 So. 2d 1272, 1275, *writ denied*, 07-0506 (La. 4/27/07) 955 So. 2d 692 ("La. R.S. 9:5605(E) lifts the three year peremptive period, giving the claimant one year from the date of the discovery of the actions which allegedly constituted malpractice."); *Dauterive Contractors, Inc. v. Landry and Watkins*, 01-1112 (La. App. 3 Cir. 3/13/02), 811 So. 2d 1242, 1251 ("In cases of fraud, the 'peremptive period' referenced in La. R.S. 9:5605(E) refers to the three-year peremptive period only. Therefore, if fraud is proven, the three-year peremptive period will be inapplicable. The presence of fraud notwithstanding, however, the one-year peremptive period is always applicable, and the malpractice action must still be brought within one year of the alleged act or within one year from the date that the alleged act is discovered or should have been discovered."); *Broussard v. Toce*, 99-

555 (La. App. 3 Cir. 10/13/99), 746 So. 2d 659, 662 ("Subsection E of La. R.S. 9:5605 carves out an exception for the three-year peremptive period only"). Yet, at least one court had held "because both the one and three year limitations of La. R.S. 9:5605(A) are peremptive, the fraud exception of La. R.S. 9:5605(E) is applicable to both." *Coffey v. Block*, 99-1221 (La. App. 1 Cir. 6/23/00), 762 So. 2d 1181, 1187, *writ denied*, 00-2226 (La. 10/27/00).

In some cases, the reasoning behind applying the fraud exception solely to the three-year peremptive period appears to be linked to the 1992 amendment to La. R.S. 9:5605. La. R.S. 9:5605 was originally enacted in 1990 "to provide for liberative prescription and for peremption of actions" against attorneys. *See* 1990 La. Acts 683, § 1. Legislative history demonstrates the purpose of the statute was to provide a one-year prescriptive and three-year peremptive period for legal malpractice claims. *See* Minutes, Civil Law and Procedure Committee, May 29, 1990 (H.B. 1338); Minutes, Senate Committee on Judiciary A, June 26, 1990 (H.B. 1338). The original legislative bill did not include a fraud exception, but during senate committee debate the proposed bill was amended to "state that in the case of fraud, the peremptive period would not apply." *See* Minutes, Senate Committee on Judiciary A, June 26, 1990 (H.B. 1338). Thus, when the fraud exception was added it was only applicable to the three-year period because only the three-year period was peremptive.

However the legislature amended La. R.S. 9:5605 in 1992 to provide, among other things, that both the one-year and three-year periods of limitation in Subsection (A) of the statute are peremptive periods. The provision providing the fraud exception was not changed or amended, and continued to provide the "peremptive period provided in Subsection (A) of this Section shall not apply in cases of fraud." Because the legislature amended the statute to provide more than one peremptive period, but did not change the word "period" in Subsection (E) to "periods," some appellate

courts have interpreted the statute to mean the fraud exception is still only applicable to the original three-year peremptive period. *See Granger*, 948 So. 2d at 1275 (citing *Dauterive Contractors*); *Dauterive Contractors*, 811 So. 2d at 1251; *see also Huffman v. Goodman*, 34,361 (La. App. 2 Cir. 4/4/01), 784 So. 2d 718, 727 (addressing the same issue relative to La. R.S. 9:5606, governing actions against insurance agents); George Denègre, Jr. and Shannon S. Holtzman, *Professional Malpractice Peremption: Clarified Through Adversity*, 59 La. B.J. 176 (2011). We do not find this reasoning persuasive.

Although we agree when La. R.S. 9:5605(E) is applied the legal malpractice claim must be brought within one year of discovery of the fraud, we find it improper to apply the "one-year from discovery" limitation period in Subsection (A). This court has previously recognized La. R.S. 9:5605 provides three peremptive periods: (1) a one-year peremptive period from the date of the act, neglect, or omission; (2) a one-year peremptive period from the date of discovering the act, neglect, or omission; (3) and a three-year peremptive period from the date of the act, neglect, or omission when the malpractice is discovered after the date of the act, neglect, or omission. *Jenkins v. Starns*, 11-1170 (La. 1/24/12), 85 So. 3d 612, 626. Because all of the time periods in La. R.S. 9:5605 are peremptive in nature, the clear wording of Subsection (E) mandates that none of the time periods in the statute can be applied to legal malpractice claims once fraud had been established. After de novo review we interpret the statute to provide that once fraud is established, **no** peremptive period set forth in the statute is applicable.

Having eliminated application of all of the limitation periods in La. R.S. 9:5605, we find it is proper to revert to the limitation period in effect prior to enactment of La. R.S. 9:5605. Our holding in *Bunge, supra*, supports this conclusion. In *Bunge*, this court applied the fraud exception contained in La. R.S. 9:2772(H), the

22

statute setting forth the peremptive period for suits against contractors. 557 So. 2d at 1385. Having found the fraud exception applicable, we stated, "[i]f a cause of action is not perempted by the statute, it will be subject to ordinary principles of prescription." *Id.* This court then applied the ordinary one-year prescriptive period in La. C.C. art. 3492. *Id.* at 1385-86.

Before the enactment of La. R.S. 9:5605, an action for legal malpractice was generally considered a delictual action governed by the one-year prescription of La. C.C. art. 3492.[7] In *Braud v. New England Insurance Co.*, 576 So. 2d 466, 468 (La.1991), this court explained:

> In the absence of an express warranty of result, a claim for legal malpractice is a delictual action subject to a liberative prescription of one year. La. C.C. Art. 3492 (1983); This prescription commences to run from the day injury or damage is sustained. La. C.C. art. 3492. But there are countervailing factors that may serve to suspend or delay the commencement of prescription. For example, during the attorney's continuous representation of the client regarding the specific subject matter in which the alleged wrongful act or omission occurred, prescription will be suspended. (Internal citations removed).

Thus, we hold in cases where fraud is established pursuant to La. R.S. 9:5605(E), a legal malpractice claim is governed by the one-year prescriptive period set forth in La. C.C. art. 3492.

## Application of the Prescriptive Period

Although La. C.C. art. 3467 provides that "prescription runs against all persons unless exception is established by legislation," this court has applied the jurisprudential doctrine of *contra non valentem* as an exception to this statutory rule. *Fontenot v. ABC Ins. Co.*, 95-1707 (La. 6/7/96), 674 So. 2d 960, 963. We have recognized four factual situations in which contra non valentem prevents the running

---

[7] La. C.C. art. 3492 provides: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

of liberative prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;

> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or

> (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

*Id.* We have already found Ms. Myer-Bennett's actions were undertaken with the intent to lull Ms. Lomont into inaction and prevent her from asserting a legal malpractice claim. Ms. Lomont's delay in bringing this action was a direct result of the fraud committed by Ms. Myer-Bennett, rather than her own willfulness or negligence. Thus, we find the third category of contra non valentem applicable. Application of this category of contra non valentem is partly an application of "the long-established principle of law that one should not be able to take advantage of his own wrongful act." *See Nathan v. Carter*, 372 So. 2d 560, 562 (La. 1979); *see also Corsey v. State, through Dept. Of Corrections*, 375 So. 2d 1319, 1324 (La. 1979); *Hyman v. Hibernia Bank & Trust Co.*, 139 La. 411, 417-18, 71 So. 598, 600 (La. 1916). Moreover, because Ms. Lomont's legal malpractice action is now governed by a prescriptive period, rather than peremptive period, application of the third category of contra non valentem is also warranted because of the continuous representation rule. In *Jenkins*, this court explained:

> This Court has held the third application of contra non valentem encompasses what is known at common law as the "continuous representation rule." The continuous representation rule recognizes a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which services are rendered. The continuous representation rule also protects the integrity of the attorney-client relationship and affords an

attorney an opportunity to remedy an error while, at the same time, prevents the attorney from defeating the client's claim through pleading statute of limitations.

85 So. 3d at 623 (internal citations removed). In *Jenkins*, we overruled the court of appeal's application of the continuous representation rule to suspend the commencement of the one-year period under La. R.S. 9:5605, but we tangentially recognized application of the continuous representation rule in fraudulent concealment cases. We explained that "[w]hile the majority [of the court of appeal] concluded it would be unjust to find the continuous representation rule inapplicable because that would mean 'a reasonable person cannot trust their attorney,' Judge McClendon [in dissent] found the majority's reasoning flawed because in situations of fraud, where trust is misplaced, the peremptive period does not apply." *Id.* at 618. We referenced Judge McClendon's dissent, wherein she distinguished the case from one involving fraudulent concealment:

> This case is distinguished from one where the discovery of the act, omission, or neglect was hidden by the attorney such that the client did not know or had no way of knowing of the wrong, or where the attorney fraudulently lulls a client into believing a problem he has created can be fixed. The allegations of Ms. Jenkins's [sic] petition cannot be construed to allege fraud so that the peremptive periods are not applicable.

*Id.*

Having determined prescription was suspended, we now consider when prescription began to run against Ms. Lomont. This court has held that the "date of discovery" from which prescription/peremption begins to run is the "date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant." *Jenkins*, 85 So. 3d at 621-22 (citing *Teague v. St. Paul Fire and Marine Ins. Co.*, 07-1384 (La. 2/1/08), 974 So. 2d 1266, 1275). Although Ms. Lomont became aware of the Citibank lien on December 9, 2010, the

record establishes Ms. Myer-Bennett effectively hid her malpractice by convincing Ms. Lomont the problem could be fixed and she was working to remove the lien. Thus, although aware of an undesirable result arising out of Ms. Myer-Bennett's representation, Ms. Lomont did not recognize the result was due to malpractice and could not be "fixed" by Ms. Myer-Bennett. We also find it reasonable that Ms. Lomont, a lay person with a long personal relationship with Ms. Myer-Bennett, was lulled into trusting Ms. Myer-Bennett's assertions. Ms. Lomont asserted she did not discover the fraud until she met with Ms. Kesler on June 28, 2012, when she first learned the lawsuits had not been filed and could not remove the lien, and that she had a claim against Ms. Myer-Bennett for malpractice. Ms. Lomont's assertions are buttressed by the fact she filed a legal malpractice lawsuit against Ms. Myer-Bennett only two weeks after meeting with Ms. Kesler, contrary to Ms. Myer-Bennett's claims that Ms. Lomont did not want to pursue such an action against her.

Thus, we find the one-year prescriptive period began to run on June 28, 2012, the day Ms. Lomont became aware of the deception and learned she had a malpractice action against Ms. Myer-Bennett. Because Ms. Lomont's lawsuit was filed July 12, 2012, within one year of June 28, 2012, her suit was timely filed and the lower courts erred in sustaining defendant's exception of peremption.

## CONCLUSION

Based on the facts of this case, we find defendant committed fraud within the meaning of La. R.S. 9:5605(E). Thus, the peremptive periods contained in La. R.S. 9:5605 are not applicable and plaintiff's legal malpractice claim is governed by the one-year prescriptive period in La. C.C. art. 3492. Further, the facts of this case support an application of the doctrine of contra non valentem. Because we find plaintiff filed suit within one year of discovering defendant's malpractice, we hold the lower courts erred in sustaining defendant's exception of peremption.

26

## DECREE

**Reversed and remanded for further proceedings.**