# Supreme Court of Louisiana

The Opinions handed down on the **18th day of October, 2017**, are as follows:

**BY JOHNSON, C.J.**:

2017-KK-0448    STATE OF LOUISIANA v. KAYLA BRIGNAC (Parish of Orleans)

La. C.Cr. P. art. 895(A)(13)(a) requires that a warrantless search of a probationer's residence be conducted by the probation officer specifically assigned to that probationer. The determination of whether a probation officer is "assigned to" a particular probationer is a factual finding to be made by the district court. Based on the record in this case, we find no error in the district court's finding that the search of Ms. Brignac's residence was not conducted by the probation officer assigned to her. Accordingly, we hold the search failed to comply with the requirements of Article 895(A)(13)(a). We further find this statute provides certain privacy protections for probationers, and thus its violation resulted in an unconstitutional search under Article I, §5 of the Louisiana Constitution. Because the search was unconstitutional, we hold the evidence obtained in the search should be excluded pursuant to La. C.Cr. P. art. 703(C). The district court correctly granted defendant's motion to suppress the evidence. Therefore, the ruling of the court of appeal is reversed, and the ruling of the district court is reinstated.
REVERSED AND REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

GUIDRY, J., concurs in the result.
CRICHTON, J., concurs in the result and assigns reasons.

SUPREME COURT OF LOUISIANA

No. 2017-KK-0448

STATE OF LOUISIANA

VERSUS

KAYLA BRIGNAC

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS

**JOHNSON, Chief Justice**

The underlying issue in this case concerns the reasonableness of a warrantless search of a probationer's residence by multi-agency state and federal law enforcement personnel. Specifically, we are called upon to determine whether the search violated Louisiana Code of Criminal Procedure Article 895(A)(13)(a), which provides as a condition of probation that the defendant agree "to searches of … his place of residence … at any time, by the probation officer … assigned to him, with or without a warrant … when the probation officer … has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity."

After review of the law and record, and considering the arguments of the parties, we hold that the warrantless search of defendant's residence violated the provisions of Article 895(A)(13)(a) because the search was not conducted by the probation officer assigned to her. We further find that violation of this statute constituted an unconstitutional search under Louisiana Constitution Article I, §5, requiring exclusion of the evidence pursuant to Louisiana Code of Criminal Procedure Article 703(C). Thus, we reverse the ruling of the court of appeal and reinstate the ruling of the district court which granted defendant's motion to suppress the evidence.

## FACTS AND PROCEDURAL HISTORY

The charges against defendant, Kayla Brignac, stem from a warrantless search of her residence on March 8, 2016. On that date, two officers from the New Orleans District of Probation and Parole, Chris Turner and Tiffany Eagles, along with officers from the United States Marshals Office, the A.T.F (Bureau of Alcohol, Tobacco, Firearms and Explosives), and the Louisiana State Police conducted a search of Ms. Brignac's residence at 524 ½ Bourbon Street in New Orleans.

Officer Turner testified the "residence check" was prompted because the probation department received information from another law enforcement agency that Ms. Brignac may be involved in the sale of narcotics. During the search of the residence, officers found Ms. Brignac in a bedroom and observed what appeared to be a burned marijuana cigarette in plain view. The officers then searched the kitchen and found miscellaneous pills and drug paraphernalia. Officers discovered additional contraband on the porch.

According to testimony, Officers Turner and Eagles were not the probation officers regularly assigned to Ms. Brignac; the sole probation officer assigned to Ms. Brignac was Officer Rebecca Soileau. Officer Soileau had previously performed a residence verification for Ms. Brignac.

On May 6, 2016, the state filed a bill of information charging defendant with possession of cocaine with intent to distribute; possession of oxycodone; possession of marijuana (third offense); and possession of a legend drug. Defendant filed various motions, including a motion to suppress the evidence. The district court held a hearing on August 9, 2016, and denied the motion to suppress. Ms. Brignac subsequently filed a motion for reconsideration of the motion to suppress, essentially arguing it was unlawful for the state to use a probation officer not assigned to her as

2

a means to conduct a warrantless search of her home by a multi-agency task force, and further that the search was not based on "reasonable suspicion." Following argument on the motion for reconsideration, the district court granted defendant's motion to suppress the evidence. Considering La. C.Cr. P. art. 895(A)(13)(a) and the jurisprudence relating to searches of probationers, the district court found it "compelling" that Officer Soileau was the sole probation officer assigned to defendant's case and that the other probation officers were not regularly assigned to defendant. The district court found Probation Officers Turner and Eagles were "simply there in order to effect a warrantless search … at the behest of outside agencies." The court further found this was "clearly not a residency check," rather "this was a search, based on a tip." The district court concluded that the search "smack[ed] of subterfuge to the point where … Probation and Parole was being utilized in a manner in which they were legally not able to do so."

The court of appeal reversed, finding the officers acted legally when they conducted the warrantless search. *State v. Brignac*, 16-1160, p. 3 (La. App. 4 Cir. 1/18/17), -- So. 3d --. The court explained:

> Individuals on probation possess a diminished expectation of privacy. This reduced expectation of privacy is based on a probationer's conviction and agreement to allow a probation officer to investigate his activities in order to confirm that the probationer is in compliance with the provisions of his probation. That reduced expectation of privacy authorizes reasonable warrantless searches of their persons and residences by their probation or parole officer, even though less than probable cause may be shown.
>
> This Court has recognized that a probationer is not subject to the unrestrained power of the authorities, and a search of the probationer may not be a subterfuge for a police investigation. However, a probation officer may conduct a warrantless search of a probationer's property when the officer believes such a search is necessary in the performance of his duties, and must be reasonable in light of the total atmosphere in which it takes place. In order to determine reasonableness we must consider (1) the scope of the particular intrusion, (2) the manner in which it was conducted, (3) the justification for initiating it, and (4) the

place in which it was conducted.

*Brignac*, at p. 2 (internal citations removed). The appellate court found the officers possessed reasonable suspicion to conduct a search of defendant's residence based on information that she may be involved in the sale of illegal narcotics. *Id.* at p. 3. The appellate court also noted the marijuana cigarette was readily identifiable in plain view by the officers when they entered defendant's room which provided officers with the requisite level of cause to conduct a more thorough search of the remainder of the residence. *Id.*

Although the court of appeal did not directly address Article 895(A)(13)(a), the court found the "district court's concern that the defendant's probation officer played no role in the search of the residence … is of little importance as an appellate court's review on the legality of the search is based on an assessment of the collective knowledge possessed by all of the police involved in the investigation." *Id.* (internal citations removed). The court of appeal concluded that "defendant's status as a probationer did not operate a subterfuge to conduct a suspicionless search but rather allowed officers to conduct the search without a warrant and based on less than probable cause." *Id.* (internal citations removed).

Judge Love dissented, finding the search was not reasonable. She agreed with the district court that the officers "'were simply there in order to effect a warrantless search on the behest or at the behest of outside agencies.'" *Id.* Judge Love noted "a residency verification was already conducted on the defendant by the sole probation officer assigned to her, and the search in this case was not a residency check, but was a search based on a tip." *Id.*

On defendant's application, we granted supervisory review. *State v. Brignac*, 17-0448 (La. 5/12/17), 219 So. 3d 1107.

4

**DISCUSSION**

As a general constitutional rule, warrantless searches are *per se* unreasonable under the Fourth Amendment of the United States Constitution and Article I, §5 of the Louisiana Constitution. *State v. Surtain*, 09-1835 (La. 3/16/10), 31 So. 3d 1037, 1042. Ordinarily, when evidence is seized without a warrant, the burden is on the state to demonstrate that a search is justified by some exception to the warrant requirement. *State v. Tatum*, 466 So. 2d 29, 30-31 (La. 1985). The capacity to claim the protection of the Fourth Amendment or La. Const. art. I, §5 depends upon whether the person who claims the protection has a legitimate expectation of privacy in the invaded place. *See State v. Warren*, 05-2248 (La. 2/22/07), 949 So. 2d 1215, 1223. This court has long recognized that individuals on probation possess a diminished expectation of privacy. *State v. Malone*, 403 So. 2d 1234, 1239 (La. 1981). This diminished expectation of privacy is reflected in La. C.Cr. P. art. 895(A)(13)(a), which provides:

> A. **When the court places a defendant on probation**, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and **it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:**
> ***
> (13)(a) **Agree to searches of** his person, his property, **his place of residence**, his vehicle, or his personal effects, or any or all of them, **at any time**, <u>by the probation officer or the parole officer assigned to him</u>, with or without a warrant of arrest or **with or without a search warrant**, **when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity.**

(Emphasis added). At issue is whether the search of Ms. Brignac's residence was conducted in compliance with this statutory provision, in particular whether the search was conducted by the probation officer "assigned to" Ms. Brignac.

***Interpretation of La. C.Cr. P. art. 895(A)(13)(a)***

Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the *de novo* standard of review. *Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10-0193 (La. 1/19/11), 56 So. 3d 181, 187; *Louisiana Mun. Ass'n v. State*, 04-0227 (La. 1/19/05), 893 So. 2d 809, 836. After our review, we "render judgment on the record, without deference to the legal conclusions of the tribunals below. This court is the ultimate arbiter of the meaning of the laws of this state." *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So. 3d 620, 628.

The parties offer different interpretations of Article 895(A)(13)(a). Defendant argues the language of the statute is clear and unambiguous, and the district court correctly gave the "assigned to" language its generally prevailing meaning. Defendant argues the court of appeal failed to adequately address, much less provide, a meaningful review of the district court's ruling. Defendant further argues the legislative history of the Article supports a finding that the legislature narrowly tailored the law to provide authority to conduct such a search only to the probation agent directly assigned to the probationer.

By contrast, the state argues the district court misapplied Article 895(A)(13)(a). According to the state, this Article does not require that the probation officer who conducts a check or search be "the day-to-day supervisory agent" of the defendant. The state argues in this case the Office of Probation and Parole assigned two officers to check on defendant because the office had received information from law enforcement that she was involved in the sale of illegal narcotics. Thus, by the plain language of the statute, Officers Turner and Eagles were "assigned to" the defendant for a specific purpose by their office. The state argues nothing in the Article prevents the Office of Probation and Parole from assigning officers to conduct a residence

check immediately prior to executing it, as was the case here. The state further argues

that to interpret the Article otherwise would lead to absurd consequences because if

the day-to-day supervisory officer were unavailable, no action could be taken against

a probationer even if there was overwhelming evidence of a violation.

The rules of statutory construction as set forth by this court are summarized as

follows:

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.

> The starting point in the interpretation of any statute is the language of the statute itself. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ.Code. art. 9. However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10; Moreover, "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ.Code art. 12.

> It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. La. Civ.Code art. 13.

*M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 7/1/08), 998 So. 2d 16, 26-27,

*amended on reh'g* (La. 9/19/08) (internal citations removed). With these principles

in mind, we first consider the language of Article 895(A)(13)(a).

The word "assign" is commonly defined as "to appoint to a post or duty; to appoint as a duty or task." Merriam-Webster, https://www.merriam-webster.com/dictionary/assign (last visited September 18, 2017). The statutory language "assigned to him" implies a relationship and a duty of supervision by requiring a particular probation officer be appointed to a particular probationer. Although the state suggests a broad reading of this language to encompass searches by any probation officer, as long as the officer was assigned to some task involving a probationer, we find the legislature intended a narrower application. The legislature has explicitly provided that probationers agree to searches "by *the* probation officer … assigned *to him*." The specificity of the language contemplates a limited authority granted only to the particular probation officer who is generally and regularly assigned to a particular probationer. The legislative history of La. C.Cr. P. art. 895(A)(13)(a) supports this position.

Article 895(A)(13)(a) did not exist prior to 2008. The Article originated as House Bill ("HB") 1136, introduced during the 2008 Regular Session of the Legislature. HB 1136 initially sought to amend and reenact La. R.S. 15:574.4(H)(4)(r), relative to conditions of *parole*, specifically to provide that as a condition of parole a person on parole agrees to searches of his person or property *by law enforcement officers* with or without an arrest or search warrant. At the time, subsection (r) provided that parolees agreed "to searches of … his place of residence … at any time, *by the probation officer or the parole officer assigned to him*, with or without a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on parole is engaged in or has been engaged in criminal activity since his release on parole." (Emphasis added). HB 1136 defined "law enforcement officer" as

8

including "commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, constables, wildlife enforcement agents, state park wardens, and probation and parole officers." 2008 Original House Bill No. 1136.

HB 1136 was subsequently amended by the House Committee on Administration of Criminal Justice to provide the same relative to searches as a condition of *probation* through the enactment of Code of Criminal Procedure Article 895(A)(13). The committee amendment added the following language to HB 1136:

> Section 2. Code of Criminal Procedure Article 895(A)(13) is hereby enacted to read as follows:
>
> Art. 895. Conditions of probation
>
> A. When the court places a defendant on **probation**, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation, including any of the following. That the defendant shall:
> ***
> (13) **Agree to searches of** his person, **his property**, his place of residence, his vehicle, or his personal effects, or any or all of them, at any time, **by a law enforcement officer, with or without a warrant of arrest or with or without a search warrant**, when the law enforcement officer has reasonable suspicion to believe that the person who is on parole is engaged in or has been engaged in criminal activity since his release on parole. For the purposes of this Subparagraph, "law enforcement officer" shall mean commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, constables, wildlife enforcement agents, state park wardens, and probation and parole officers.

2008 Engrossed House Bill No. 1136 (emphasis added).

The current version of Article 895(A)(13)(a) was the result of Senate Floor Amendments to the Engrossed House Bill. Specifically, HB 1136 was amended to remove all of the language relative to La. R.S. 15:574.4(H)(4)(r) (corresponding to parole). Additionally, the original proposed language for Article 895(A)(13) was deleted and replaced with the following:

> (13) Agree to searches of his person, his property, his place of residence,

his vehicle, or his personal effects, or any or all of them, at any time, **by the probation officer or the parole officer assigned to him**, with or without a warrant of arrest or with or without a search warrant, when the probation officer or the parole officer has reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity.

2008 Enrolled House Bill No. 1136 (emphasis added).[1]

This legislative history makes clear that the legislature specifically considered the exact wording of Article 895(A)(13)(a) relative to who is entitled to conduct warrantless searches of probationers. Although the original amended language in the engrossed version of the bill would have allowed *any* law enforcement officer–which specifically included *any* probation officer - to conduct such searches, the legislature further amended and limited the language to restrict that authority to *the* probation officer *assigned to* the probationer. 2008 La. Acts 655.

Moreover, we are not swayed by the state's assertion that such an interpretation leads to absurd consequences because the probation department would be left without authority to act, even if there was overwhelming evidence of a violation, if the "day-to-day" assigned probation officer is unavailable. The authority granted to probation officers in Article 895(A)(13)(a) applies solely to warrantless searches. Exigent situations involving probation violations can be handled in other ways. For example, La. C.Cr. P. art. 899(B) allows the probation officer to authorize a peace officer, either in writing or verbally, to arrest the probationer without a warrant if he has "reasonable cause to believe that a defendant has violated or is about to violate a condition of his probation or that an emergency exists so that awaiting an order of the court would create an undue risk to the public or to the probationer." Further, nothing would prevent any law enforcement officer from obtaining a search warrant

---

[1] Subsection (A)(13) was further divided into its current form, (a) and (b), in 2009. *See* 2009 La. Acts 362. The content of (b) was added to provide less restrictive search criteria for probationers convicted of a sex offense.

10

for a probationer's residence based on probable cause.

***Application of La. C.Cr. P. art. 895(A)(13)(a)***

In applying Article 895(A)(13)(a), we decline to impose strict requirements on probation departments purporting to regulate assignments of officers to probationers. Although we hold there must be some official general assignment of the particular probation officer to the particular probationer to authorize a warrantless search under the Article, we recognize the facts and circumstances of each case differ. We leave open the possibility that the facts of a case may sufficiently demonstrate that more than one probation officer was assigned to a particular probationer. We also find no blanket prohibition to outside law enforcement personnel accompanying the assigned probation officer to conduct a search under Article 895(A)(13)(a). In sum, we leave to the district court the factual determination of whether a search was conducted in accordance with Article 895(A)(13)(a) by *the* probation officer *assigned to* the defendant.

Here, the district court implicitly, if not expressly, made a finding that the search was not conducted by the probation officer assigned to Ms. Brignac as required by Article 895(A)(13)(a). After review of the record, we find no error in that ruling. As a general rule, this court reviews district court rulings under a deferential standard with regard to factual and other trial determinations, while legal findings are subject to a *de novo* standard of review. *State v. Hunt*, 09-1589 (La. 12/1/09), 25 So. 3d 746, 751. When a district court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings. *Id*.

The state argues that Officers Turner and Eagles were "assigned to" Ms.

Brignac immediately prior to execution of the "residence check" because the probation office had received information from law enforcement that she was involved in the sale of illegal narcotics. Relevant to this issue, Officer Turner testified:

Q (State):    What is your occupation, sir?

A (Turner):  I am a Probation and Parole Officer with the New Orleans District of Probation and Parole.

Q:           And, in connection with your employment, did you have the occasion to take part in the supervision and activities related to Ms. Kayla Brignac?

A:           Yes.

***

Q:           [P]lease inform the court what exactly was your role in the events surrounding March 8th of 2016, as it relates to Ms. Brignac?

A:           On March the 8th, we conducted a residence check at Ms. Brignac's address of record, 524 ½ Bourbon Street.

***

Q:           And, as part of doing that residence check, what information was it that led you to conduct a check on that day?

A:           We received information that Ms. Brignac may be involved in the sale of illegal narcotics.

Q:           And, did you receive that information from another law enforcement agency?

A:           Yes.

***

Q:           Armed with that information, what did you do?

A:           Armed with that information, we elected to conduct a residence check that morning on March the 8th, around seven a.m.

On cross examination, Officer Turner testified:

Q (Defense):[2]    According to your report, the agents who conducted the search were Agents Eagles, Bartel, Easley, and

_____

[2] Officer Turner was initially questioned by counsel for a related defendant, Jermain Tobias.

|            |                                                                 |
|------------|-----------------------------------------------------------------|
| A (Turner): | Dickens? Is that correct? Agent Eagles is from our office, and the other ones were from other law enforcement agencies. Correct. |
| Q:         | So, there were folks from the Marshals Service there?           |
| A:         | Correct.                                                        |
| Q:         | From the State Police?                                          |
| A:         | Correct.                                                        |
| Q:         | And, from the Alcohol, Tobacco, and Firearms?                   |
| A:         | That's correct.                                                 |
| Q:         | And, just to be clear, you are not Ms. Brignac's regularly assigned agent? |
| A:         | No, sir.                                                        |

The defense called Probation Officer Rebecca Soileau to testify:

| Q (Defense):[3] | Can you introduce yourself to the Court? |
|-----------------|------------------------------------------|
| A (Soileau):    | Agent Rebecca Soileau with New Orleans Probation and Parole. |

***

| Q: | And, you were the probation officer who was assigned to Ms. Kayla Brignac, correct? |
|----|-------------------------------------------------------------------------------------|
| A: | Yes, sir.                                                                           |
| Q: | You were the sole probation officer assigned to Ms. Kayla Brignac, correct?         |
| A: | Yes.                                                                                |

No other testimony or evidence was introduced relative to the issue of whether the

probation officers who were involved in the search were assigned to Ms. Brignac.

Officer Turner did not testify that he was regularly assigned to Ms. Brignac. Officer

Eagles was not called to testify. At most, Officer Turner's testimony suggests he and

---

[3] Officer Soileau was questioned by counsel for defendant Kayla Brignac.

13

Officer Eagles were assigned the task of conducting a search of Ms. Brignac's residence on March 8, 2016. Moreover, Officer Soileau's testimony that she was the sole agent assigned to defendant was not controverted.

Based on the record in this case, we find the state did not present evidence to establish that the probation officers involved in the search of Ms. Brignac's residence were "assigned to" her within the meaning of Article 895(A)(13)(a). Thus, we find no error in the district court's factual finding. We hold the search of Ms. Brignac's residence violated the provisions of Article 895(A)(13)(a).[4]

### *Suppression of the Evidence*

There is no legislatively-mandated remedy for violation of Article 895(A)(13)(a), necessitating a determination of whether suppression of the evidence seized as a result of the search is required. Searches violative of the Fourth Amendment may result in exclusion of the evidence in certain situations. Additionally, Louisiana law allows for the exclusion of evidence "unconstitutionally obtained." La. C.Cr. P. art. 703(C) ("A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.") Thus, to justify exclusion of the evidence, we must find the search was unconstitutional under either the United States or Louisiana Constitution.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

---

[4] Because we have determined the search of Ms. Brignac's residence violated La. C.Cr. P. art. 895(A)(13)(a) on the basis it was not conducted by the probation officer assigned to her, we need not reach the issue of whether "reasonable suspicion" existed for the search.

describing the place to be searched, and the persons or things to be seized." Although the Fourth Amendment protects the right to be free from unreasonable searches and seizures, it does not prescribe a remedy for its violation. Thus, the United States Supreme Court created the exclusionary rule, "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231-32, 131 S. Ct. 2419, 2423, 180 L. Ed. 2d 285 (2011); see also *State v. Davis*, 375 So. 2d 69, 72 (La. 1979). However, the fact that a Fourth Amendment violation occurred—i.e., that a search was unreasonable—does not necessarily mean that the exclusionary rule applies. *See Herring v. United States*, 555 U.S. 135, 140, 129 S. Ct. 695, 700, 172 L. Ed. 2d 496 (2009)*; Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 2324, 76 L.Ed. 2d 527 (1983). As the Supreme Court explained in *United States v. Leon*, 468 U.S. 897, 906, 104 S. Ct. 3405, 3411-12, 82 L.Ed. 2d 677 (1984)(internal citations removed):

> The wrong condemned by the Amendment is fully accomplished by the unlawful search or seizure itself … and the exclusionary rule is neither intended nor able to cure the invasion of the defendant's rights which he has already suffered. The rule thus operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.
>
> Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.

The Supreme Court has generally held that to trigger application of the exclusionary rule, the deterrent effect of suppression must be substantial and outweigh any harm to the justice system. *See Herring*, 555 U.S. at 147; *Leon*, 468 U.S. at 909-10.

In considering whether the violation of Article 895(A)(13)(a) constitutes a Fourth Amendment violation, we examine the most recent decisions from the United States Supreme Court addressing Fourth Amendment rights of probationers. In *Griffin*

*v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed. 2d 709 (1987), the Court upheld a search of a probationer conducted pursuant to a Wisconsin regulation permitting "any probation officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband." 483 U.S. at 870-71. The Court held that a state's operation of its probation system presented a "special need" for the "exercise of supervision to assure that [probation] restrictions are in fact observed." *Id*. at 875. That special need for supervision justified the Wisconsin regulation and the search pursuant to the regulation was thus reasonable. *Id*. at 875-80.

In *United States v. Knights*, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed. 2d 497 (2001), the Court again took up an issue involving Fourth Amendment rights of probationers. In *Knights*, the defendant's California probation order contained a "search condition" stating that Knights would "'[s]ubmit his … person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.'" 534 U.S. at 114. The Court upheld a search of Knights' residence as part of an arson investigation, rejecting the notion that the Fourth Amendment permits only "probationary" searches and not "investigatory" searches of probationers. *Id*. at 117-18. In upholding the search, the Court explained that the probation condition "significantly diminished Knights' reasonable expectation of privacy." *Id*. at 119-20. Given the reduced expectation of privacy, a search based on reasonable suspicion, even by a police officer, was permissible. *Id*. at 121.

Five years later, the Court addressed the scope of Fourth Amendment protection to parolees in *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed. 2d 250 (2006). In *Samson* the Supreme Court extended the principle of *Knights*

to uphold a warrantless search of a parolee even in the absence of reasonable suspicion. 547 U.S. at 847. The search was authorized by a state statute which provided, in relevant part, that every prisoner eligible for release on parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Id.* at 846.

Although the Supreme Court declined to find Fourth Amendment violations in these cases, and appears to have given wide latitude to law enforcement officers to conduct warrantless searches of probationers and parolees, the Court's sanctioning of these searches was not based on the defendants' probationer or parolee status alone. Rather, it is legally significant that these cases are all premised on the probationer's or parolee's diminished expectation of privacy stemming from either a state regulation or their parole/probation agreement. Specifically, in *Griffin*, the search was conducted by a probation officer pursuant to a state regulation applied to all probationers which permitted "*any probation officer* to search a probationer's home *without a warrant* as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband." (Emphasis added). In *Knights*, the defendant was subject to a probation condition which provided that he would "[s]ubmit his ... person, property, place of residence, vehicle, personal effects, to search at anytime, *with or without a search warrant*, warrant of arrest or reasonable cause *by any probation officer or law enforcement officer*." (Emphasis added). Finally, in *Samson*, the search was conducted under the authority of a California law which provides that every prisoner eligible for release on state parole "shall agree in writing to be subject to search or seizure *by a parole officer or other peace officer* at any time of the day or night, *with or without a search warrant* and with or without

17

cause." (Emphasis added). Notably, the Court in *Sampson* recognized "that some States and the Federal Government require a level of individualized suspicion," and implied that in such jurisdictions a suspicionless search would remain impermissible. 547 U.S. at 855.

Unlike the more expansive search authority granted by the particular state regulations or probation/parole agreements in those cases, Article 895(A)(13)(a) limits the authority to conduct a search to the probation officer assigned to the probationer, and requires reasonable suspicion. Given Louisiana's more restrictive provision governing warrantless searches of probationers, we do not read these Supreme Court cases broadly to provide constitutional validity to the search of Ms. Brignac's residence under a Fourth Amendment analysis. *See U.S. v. Freeman*, 479 F. 3d 743, 748 (10th Cir. 2007)("*Samson* does not represent a blanket approval for warrantless parolee or probationer searches by general law enforcement officers without reasonable suspicion; rather, the Court approved the constitutionality of such searches only when authorized under state law.")

Moreover, our decision in this case does not hinge on finding a Fourth Amendment violation. Article I, §5 of the Louisiana Constitution also protects its citizens against unreasonable searches and seizures, but it is not identical to the Fourth Amendment. La. Const. art. I, § 5 provides:

> Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.

This court has recognized:

> Our state constitution's declaration of the right to privacy contains an

18

affirmative establishment of a right of privacy, explicit protections against unreasonable searches, seizures or invasions of property and communications, as well as houses, papers and effects, and gives standing to any person adversely affected by a violation of these safeguards to raise the illegality in the courts. This constitutional declaration of right is not a duplicate of the Fourth Amendment or merely coextensive with it; it is one of the most conspicuous instances in which our citizens have chosen a higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution.

*State v. Hernandez*, 410 So. 2d 1381, 1385 (La. 1982) (internal citations removed).

Supreme Court jurisprudence relative to Fourth Amendment rights of probationers is of limited relevance in considering whether the search of Ms. Brignac's residence violated the Louisiana Constitution. Although this court gives "careful consideration to the United States Supreme Court interpretations of relevant provisions of the federal constitution … we are not bound by them in construing the Louisiana Constitution." *State v. Reeves*, 427 So. 2d 403, 409 (La. 1982). Thus, even absent a Fourth Amendment violation, we are not prevented from finding the search nonetheless violated the more explicit privacy protections in Louisiana's constitution.

Article 895 sets forth the conditions of probation, providing rules and guidelines that directly define a probationer's expectation of privacy. Article 895(A)(13)(a) diminishes the privacy rights of probationers by allowing for warrantless searches under certain conditions. By the same token, Article 895(A)(13)(a) protects certain privacy rights of probationers by providing limitations on warrantless searches of a probationer's person, property, residence, vehicle, or personal effects (i.e., searches must be conducted by the probation officer assigned to the probationer, and reasonable suspicion of criminal activity is required). Considering the holdings in *Griffin*, *Knights*, and *Sampson*, it is clear Article 895(A)(13)(a) does not restrict probationers' rights to the extent permitted by the Supreme Court. Although our legislature is undoubtedly free to further curtail

probationers' privacy rights, it has presumably chosen not to do so.

While not all violations of statutory restrictions on searches can be deemed constitutional violations, this court has suggested that the exclusionary rule can be applied to prevent violations of a statute where that statute is designed to prevent unconstitutional invasions of privacy interests. *See State v. Gates*, 13-1422 (La. 5/7/14), 145 So. 3d 288, 299 ("Nor have we extended the exclusionary rule to include non-constitutional violations of statutes which are not designed to protect the privacy interests of citizens. 'When the statutory limitation (or duty) alleged to have been violated by the officer is not designed to implement fundamental rights of privacy, this court should not employ the exclusionary rule as a device to enforce such legislative directives.'"); *State v. Barrilleaux*, 620 So. 2d 1317, 1321 (La. 1993)("The affiant in the present case violated the requirements of La.Code Crim.Proc. art. 162 by not including in the affidavit all the information necessary to establish probable cause. Because Article 162 was designed to prevent unconstitutional invasions of privacy interests, the exclusionary rule may be used to prevent violations of these statutory requirements."); *State v. Bickham*, 404 So. 2d 929, 933 (La. 1981). Because Article 895(A)(13)(a) protects certain privacy interests of probationers by placing limitations on warrantless searches of their residences, we find the violation of Article 895(A)(13)(a) in this case constituted an unreasonable search and invasion of Ms. Brignac's privacy under Article I, §5 of the Louisiana Constitution. For these reasons, we hold the evidence is properly excluded and the district court correctly granted defendant's motion to suppress the evidence. *See* La. C.Cr. P. art. 703(C).

## CONCLUSION

La. C.Cr. P. art. 895(A)(13)(a) requires that a warrantless search of a probationer's residence be conducted by the probation officer specifically assigned

to that probationer. The determination of whether a probation officer is "assigned to" a particular probationer is a factual finding to be made by the district court. Based on the record in this case, we find no error in the district court's finding that the search of Ms. Brignac's residence was not conducted by the probation officer assigned to her. Accordingly, we hold the search failed to comply with the requirements of Article 895(A)(13)(a). We further find this statute provides certain privacy protections for probationers, and thus its violation resulted in an unconstitutional search under Article I, §5 of the Louisiana Constitution. Because the search was unconstitutional, we hold the evidence obtained in the search should be excluded pursuant to La. C.Cr. P. art. 703(C). The district court correctly granted defendant's motion to suppress the evidence.

Therefore, the ruling of the court of appeal is reversed, and the ruling of the district court is reinstated.

**DECREE**

**REVERSED AND REMANDED TO THE DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

# SUPREME COURT OF LOUISIANA

## No. 2017-KK-0448

## STATE OF LOUISIANA

## VERSUS

## KAYLA BRIGNAC

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FOURTH CIRCUIT, PARISH OF ORLEANS

**CRICHTON, J., concurs and assigns reasons**

I concur in the majority's conclusion in this matter, but write separately to emphasize that the plain language of the statute at issue, art. 895(A)(13)(a) of the Louisiana Code of Criminal Procedure, necessarily dictates the result. Specifically, the majority appropriately finds the district court correctly gave the "assigned to" language its generally prevailing meaning. Based upon our rules of statutory construction, I cannot disagree with the majority's finding in this regard. However, I do note that the specific portions of the statute at issue which state that a defendant agrees to searches . . . "by the probation officer or the parole officer **assigned to him**. . . ." (emphasis added) are superficial in that, should the legislature find that the result here was not what was intended, they may change the wording of the statute without compromising its substance. In my view, it is unlikely that the legislature intended for a repeat felon to receive the remedy he does here today when a different officer conducted a search provided for by this same statute. As the majority aptly notes, defendants on probation have a decreased expectation of privacy, and as a condition of their probation, consent to searches such as those outlined in the statute. Consequently, a warrantless search under La. C.Cr.Pr. art.

1

895(A)(13)(a) does not present a constitutional prohibition on its face– if one applies the plain language of the statute and has only the probation officer or parole officer "assigned to him" conduct the search. It is for this reason I am constrained to the terms of the statute, and believe its strict application to the facts of this case mandates the Court's decision today.