Judgment rendered August 10, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,657-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CARL D. BRYANT AND                          Plaintiff-Appellants
CYNTHIA D. BRADFORD

versus

DEAN MORRIS, LLC,                           Defendant-Appellees
CHRISTINAN TRUST, A
DIVISION OF WILMINGTON
SAVINGS FUND SOCIETY,
NORMANDY MORTGAGE
LOAN TRUST SERIES 2016-1,
STANWICH MORTGAGE LOAN
TRUST SERIES 2013-7, AERO
MORTGAGE LOAN TRUST
2017-1, FV-1, INC., ARGENT
MORTGAGE COMPANY, LLC,
RESIDENTIAL FUNDING
COMPANY, LLC, RUSHMORE
LOAN MANAGEMENT
SERVICES, LLC,
HOMECOMINGS FINANCIAL
LLC, RESCAP LIQUIDATING
TRUST, AND MARIAN CRANE
THOMPSON

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 623,439

Honorable Craig O. Marcotte, Judge

* * * * *

ALAN PESNELL LAWYER LLC
By: W. Alan Pesnell

Counsel for Appellants,
Carl D. Bryant and
Cynthia D. Bradford

DEAN MORRIS LLC
By: Ashley E. Morris

Counsel for Appellees,
Wilmington Savings
Fund Society, Normandy
Mortgage Loan Trust
Series 2016-1, Aero
Mortgage Loan Trust
2017-1, and Dean
Morris, LLC

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ PC
By: Katie L. Dysart
    Camalla K. Guyton

Counsel for Appellee,
Rushmore Loan
Management Services
LLC

COOK, YANCEY, KING & GALLOWAY
By: Robert Kennedy, Jr.

Counsel for Appellee,
FV-1 Inc., as Trustee for
Morgan Stanley Capital
Holdings LLC

BURR & FORMAN LLP
By: Christopher D. Meyer

Counsel for Appellee,
Argent Mortgage Co.,
LLC

STEEG LAW FIRM, LLC
By: Charles L. Stern, Jr.

Counsel for Appellee,
Marian Crane Thompson

* * * * *

Before MOORE, PITMAN, and STEPHENS, JJ.

**MOORE, C.J.**

The plaintiffs, Carl D. Bryant and Cynthia D. Bradford, appeal a judgment that sustained the defendants' exceptions of prescription and dismissed the plaintiffs' claims with prejudice in an action that alleged fraud, ill practices and wrongful seizure and sale of their property. The plaintiffs also appeal a ruling from the trial court denying a confirmation of default and relief against three additional defendants.[1]

For the following reasons, we affirm.

### FACTS

On May 25, 2005, Carl Bryant borrowed $170,150.00 from Argent Mortgage Company evidenced by an adjustable rate, interest-only note signed by him (hereinafter "Note") in order to purchase a house located at 10461 Plum Creek Drive, Shreveport, Louisiana 71106. The note was secured by a mortgage (hereinafter "Mortgage") on the property executed by Bryant and his daughter, Cynthia Bradford, a co-owner of the property. The Mortgage was recorded in the public records for Caddo Parish.

The Note signed by Bryant had a term of 30 years, requiring him to make interest-only (7.3%) monthly payments from July 1, 2005, until July 1, 2007; then principal and interest payments of $1,035.08 beginning July 1, 2007 until June 1, 2035.

Bryant failed to make the monthly interest installment for October 1, 2006, and all of the monthly payments thereafter. Argent, through its agent, filed *in rem* foreclosure proceedings on May 21, 2007, with a petition to

---

[1] Stanwich Mortgage Loan Trust 2017-1, Homecomings Financial LLC and Residential Funding Company.

enforce security interest by ordinary process and captioned as *GMAC Mortgage, LLC v. Carl D. Bryant and Cynthia Denise Bradford* (hereinafter "First Action"). An *in rem* judgment was entered against the appellants on January 28, 2008.

Subsequently, the law firm of Dean Morris, LLC, attorneys for GMAC, sent the Caddo Parish Sheriff a facsimile letter requesting the Sheriff to stop foreclosure proceedings because the mortgagors had completed a loan modification. The letter also said that GMAC intended to dismiss the suit without prejudice. A motion by GMAC to dismiss the suit without prejudice was granted on April 21, 2008.

Nevertheless, Mr. Bryant failed to pay the monthly installment for June 1, 2008 and all monthly installments thereafter. A second *in rem* foreclosure proceeding commenced with a petition to enforce security interest by ordinary process captioned as *Homecomings Financial, LLC f/k/a Homecomings Financial Network, Inc. v. Carl D. Bryant and Cynthia Denise Bradford* (hereinafter "Second Action"). This action was also dismissed without prejudice, on March 2, 2009.

On September 27, 2011, Argent assigned the note and mortgage to FV-1, Inc. in Trust for Morgan Stanley Mortgage Capital Holdings, LLC. This was Argent's last act with respect to the Note and Mortgage.

Mr. Bryant subsequently defaulted on the FV-1 note multiple times, which resulted in another foreclosure proceeding ("Third Action") initiated on October 11, 2011. Default judgments were entered against Bryant and Bradford ("plaintiffs") in May of 2012; however, FV-1 agreed not to execute on the judgments after the plaintiffs agreed to another loan modification, with Rushmore Loan Management Services, LLC, the lender who serviced

2

the plaintiffs' loan. The loan modification "de-accelerated" the loan to a status where the lender would accept monthly payments as opposed to requiring payment in full. FV-1's last act concerning the property was the assignment of its interest in the Note and Mortgage to Christiana Trust[2] on September 10, 2015, almost 5 years before the plaintiffs filed this suit on April 22, 2020.

Finally, Christiana Trust filed a foreclosure proceeding ("Fourth Action") on December 9, 2015. Mr. Bryant was personally served with the petition to enforce security interest by ordinary process on December 15, 2015. A default judgment was entered against him on May 6, 2016. Ms. Bradford, who was believed to be an absentee, was served with a copy of the judgment through a court-appointed curator for her. Judgment was entered against Ms. Bradford on August 1, 2016.

The judgments were later assigned to Wilmington Savings Fund Society, FSB d/b/a Christiana Trust, as Trustee for Normandy Mortgage Loan Trust, Series 2016-1 and then to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee, on behalf of Aero Mortgage Loan Trust 2017. This entity sought to enforce the judgment through a writ of fieri facias issued on September 13, 2016. Carl Bryant was served with the writ on September 15, 2016, and Cynthia Bradford was served on September 19, 2016, through the curator ad hoc.

Mr. Bryant and Ms. Bradford alleged later that during the lawsuit filed by Wilmington Savings Fund Society, i.e., the Fourth Action, they "began

---

[2] The caption of this case misspells the defendant as Christinan Trust.

3

trying to obtain information regarding the claims" but the defendants evaded and avoided their questions.

The property was scheduled for sheriff's sale on August 9, 2017. However, two days prior to the sale, Mr. Bryant filed for Chapter 13 bankruptcy in the U.S. Bankruptcy Court for the Western District of Louisiana. The bankruptcy court dismissed the suit on June 25, 2018, for failure to make bankruptcy plan payments.

The property was rescheduled for sheriff's sale on October 3, 2018, but was halted on October 2, 2018, one day before the scheduled sale, when Mr. Bryant filed another petition for bankruptcy. The bankruptcy petition was prepared by Ms. Bradford who signed and filed a declaration attesting to the fact that she prepared the petition. This bankruptcy was dismissed on October 22, 2018, 20 days after it was filed. Ms. Bradford later admitted that she assisted her father in preparing the bankruptcy petition for purposes of stopping the sheriff's sale.

The sheriff's sale was finally conducted on April 24, 2019, when the property was sold to Wilmington Savings Fund Society, FSB, as trustee, on Behalf of Aero Mortgage Loan Trust 2017-1. The property was later sold to a third party, Marian Crane Thompson on March 13, 2020, and the deed is recorded in the Caddo Parish conveyance records. The plaintiffs also named Ms. Thompson a defendant in this case and seek a judgment declaring her deed null and void.

Plaintiffs filed the instant petition on April 21, 2020, three days short of one year after the sheriff's sale of the property, and a little more than a month after the property was sold to a third party. They alleged that because they had never received any answers to their questions, they were forced to

seek the advice of an attorney within 30 days of filing suit. The attorney advised them that the various assignments and judgments were not legitimate because the Note was extinguished by the first action resulting in a judgment against them in 2008. They alleged that they were unaware that the original judgment in 2008 extinguished the Note.

*The Petition*

The plaintiffs characterize this petition as a nullity action combined with a declaration of rights and for supplemental relief (i.e., damages). The petition names as defendants all the entities who have held the Note and/or the Mortgage and those who represented those entities in the four foreclosure proceedings that resulted in the three judgments against them.

The plaintiffs alleged:

(1) the Note and Mortgage were extinguished by the January 28, 2008 judgment, in the First Action.

(2) the judgment obtained by the First Action has prescribed and is therefore unenforceable.

(3) the plaintiffs should be declared owners of the property, free of any mortgages, liens or encumbrances.

(4) Because the Note and Mortgage were extinguished by the judgment granted in the First Action, the subsequent judgments of May 14, 2012 (Second Action) and May 6, 2016 (Fourth Action) together with the sheriff's sale deed, are also all null and void. Finally, they seek to quiet title (i.e., be declared the lawful owners not subject to liens, mortgages or encumbrances), and they assert damage claims based on fraud, negligence, gross negligence, and violations of the LUTPA and FDCPA.

Most of the defendants filed peremptory exceptions of prescription and no cause of action asserting that the action to annul the 2016 judgment resulting in the sheriff's sale of the property has prescribed.

After a trial on the exceptions, the court found that Bryant and Bradford, who each claimed they had no knowledge regarding the allegedly fraudulent foreclosure actions, finding out after they consulted an attorney in March of 2020, were simply not credible—especially after Ms. Bradford admitted that she helped her father file bankruptcy in order to stop the sheriff's sales of the property. (Mr. Bryant stipulated that his testimony would essentially be the same as Ms. Bradford's.)

The court concluded that the action to annul the prior judgments for the alleged fraud had prescribed, finding that the one-year prescriptive period began no later than August 1, 2016, when the judgment in the Fourth Action was rendered against them (and they were served with notice of it.) The court dismissed the petition, ruling that all the claims had prescribed and pretermitted any ruling on the no cause of action exceptions.

Subsequently, after this judgment, the plaintiffs entered a preliminary default judgment against some of the defendants who were not included in the dismissal. When the default came up for confirmation, the court denied the confirmation on grounds that the plaintiffs had not made a prima facie case.

This later ruling is also included in the assignments of error raised in this appeal that followed.

**DISCUSSION**

The plaintiffs' action to annul hinges on the proposition that the initial *in rem* judgment in the First Action rendered against them on January 28,

2008, extinguished the Note and merged with the judgment, and therefore, all of the subsequent purported assignments of the Note and Mortgage were invalid and, as purported assignments, they constituted fraud or ill practices. While all the assignments and judgments subsequent to 2008 were invalid, they seek to annul the May 6, 2016, judgment because it resulted in the loss of their home via sheriff's sale.

Plaintiffs' theory that the Note was extinguished is based on La. R.S. 13:4231, **Res Judicata**, amended in 1990, which, in part, reads:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

Comment (a) to this amended article at least somewhat appears to support their theory that the Note, as the underlying transaction, was extinguished and merged in the judgment. Comment (a) reads, in part:

> [I]n *Mitchell v. Bertolla*, 340 So. 2d 287 (La. 1976) the plaintiff sued unsuccessfully to rescind the lease for lesion beyond moiety and nonpayment of the rent, and then sued to rescind the same lease for fraud. The supreme court held that the second action was not barred by *res judicata* because it was based on a different cause (the legal principle upon which the demand is based).
>
> Under new R.S. 13:4231, [however], the second action would be barred because it arises out of the occurrence which was the subject matter of the prior litigation. The central inquiry is not whether the second action is based on the same cause or cause of action (a concept which is difficult to define) but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action. . . . For purposes of res judicata it would not matter whether the cause of action asserted in the second action was the same as that asserted in the first or different as long as it arose out of the transaction or occurrence that was the subject matter of the first action.

7

On the other hand, comment (f) implies that res judicata extinguishes only (1) all of the causes of action that were asserted in the litigation, and (2) any other *existing* causes of action that were not raised in the action. In other words, the 1990 amendment defines res judicata more in line with the Common Law doctrine that res judicata applies to everything pleaded in a cause, but also applies to anything that might have been pleaded. Comment (f) reads:

> (f) **Extinguished and merged**. When the judgment is in favor of the plaintiff all causes of action that had been asserted are both extinguished and merged in the judgment. Any subsequent action by the plaintiff must be based on the judgment itself. Causes of action that had not been asserted by the plaintiff are extinguished and barred by the judgment.

The defendant, Argent, contends that the plaintiffs' argument is misplaced and incorrect. It contends that the transaction giving rise to the cause of action was the missed monthly payment, e.g. the October 1, 2006, installment. While the *res judicata* statute would bar any future cause of action based on failure to pay that installment or bar any other cause for an action on the Note existing at that time, it does not extinguish the Note, nor does it preclude a future cause of action for default on a different installment, particularly since the plaintiffs entered into a loan modification, and the 2008 judgment was dismissed.

Whatever the result may be, a resolution of this issue is not necessary to rule on the merits of the plaintiffs' assignments of error in this appeal. The trial court sustained the exception of prescription for the action to annul by assuming, *arguendo,* that the allegations are true. It then concluded that even if the plaintiffs' allegations of fraud and ill practices regarding the 2016 judgment have merit, such an action to annul that judgment has prescribed.

8

Accordingly, we will review only the assigned errors.

The standard of review of a judgment pertaining to an exception of prescription turns on whether evidence is introduced at the hearing of the exception. *Mitchell v. Baton Rouge Orthopedic Clinic, LLC*, 21-00061 (La. 10/10/21), 333 So. 3d 368. Evidence may be "introduced to support or controvert [a peremptory exception] pleaded, when the grounds thereof do not appear from the petition." La. C.C.P. art. 931. If no evidence is submitted at the hearing, the exception "must be decided upon the facts alleged in the petition with all of the allegations accepted as true." *Lomont v. Bennett*, 14-2483, p. 8 (La. 6/30/15), 172 So. 3d 620, 627. In that case, the reviewing court is simply assessing whether the trial court was legally correct in its finding. *Mitchell, supra*; *In re Med. Rev. Panel of Gerard Lindquist*, 18-444, (La. App. 5 Cir. 5/23/19), 274 So. 3d 750, *writ denied*, 19-01034 (La. 10/1/19), 280 So. 3d 165.

When evidence is introduced at the hearing, a court need not accept the allegations of the petition as true, and the lower court decisions are to be reviewed under a manifest error-clearly wrong standard of review. *Mitchell, supra*; *Lomont, supra*. A caveat to this rule is that, even when evidence is introduced, when there is no dispute regarding material facts, the reviewing court is to apply a de novo standard of review, and give no deference to the trial court's legal conclusions. *Mitchell, supra.*

In this case, evidence, both testimonial and documentary, was introduced into the record at the hearing on the exception of prescription. The record clearly demonstrates that the issues in this case are not purely legal. Factual determinations were required by the trial court with respect to when and if the prescriptive period commenced. Accordingly, as recognized

9

by the parties, we apply a manifest error-clearly wrong standard of review to factual determinations, but de novo review on issues of law.

An action to annul a judgment obtained by fraud or ill practices must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices. La. C.C.P. art. 2004(B). The burden of proof to show that a nullity action was brought within one year of the discovery of the fraud or ill practice is on the proponent of the nullity action. *Carrie v. The Kroger Store*, 52,846 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1150; *Greenland v. Greenland,* 08-2568 (La. App. 1 Cir. 12/9/09), 29 So. 3d 647, 653, *writ denied,* 10-0004 (La. 3/5/10), 28 So. 3d 1011. The one-year limitation to file an action to annul under Art. 2004 is a period of peremption. *Id*.

By their first assignment of error, plaintiffs allege that the trial court committed legal error by granting the exceptions of prescription and dismissing their suit. The legal error, they allege, occurred when the trial court concluded that the one-year prescriptive period commenced when the plaintiffs were damaged by the May 6, 2016, judgment of foreclosure, and thus put on notice to investigate further whether they believed they were wrongfully harmed. The plaintiffs argue, however, that pursuant to La. C.C.P. art. 2004 (B), the commencement of prescription in an action to annual a judgment does not begin to run until the plaintiffs' discovery of the fraud or ill practices. In this case, they did not learn that the May 6, 2016, judgment was obtained as a result of fraud or ill practices until they spoke with an attorney several years later, less than a month before suit was filed on April 21, 2020. While the plaintiffs acknowledge that they knew that there was a judgment of foreclosure against them and the proposed sale of

10

their home, they did not know that all of the actions taken by lenders, servicers, attorneys and the court since the 2008 judgment constituted fraud and ill practices.

The legal issue here, then, is whether actual knowledge that fraud or ill practices have occurred is required commence the one-year prescriptive period. Stated differently, is "constructive notice" sufficient to trigger commencement of the prescriptive period in an action to annul a judgment?

In *Alexander v. Centanni*, 20-0321 (La. App. 4 Cir. 1/27/21), __ So. 3d __2021 WL 343404, *writ denied*, 21-00452 (La. 5/25/21), 316 So. 3d 444, the plaintiff filed a suit to annul a judgment rendered five years earlier, claiming that he only learned of the fraud or ill practice within a year of filing his suit to annul the judgment. The court dismissed the claim on prescription, stating:

> "It is the knowledge of the facts, not knowledge of the legal consequences of the facts, that 'commences the running' of the time period." *Blake v. Blake*, 16-1196, p. 19 (La. App. 4 Cir. 9/20/17), 228 So. 3d 223, 236, *writ denied*, 17-2057 (La. 3/23/18), 239 So. 3d 297. Actual knowledge is not necessary; "as long as there is constructive notice." *Bayou Fleet, Inc. v. Bollinger Shipyards, Inc.*, 15-0487, p. 13 (La. App. 4 Cir. 7/21/16), 197 So. 3d 797, 806. "Knowledge sufficient to start the running of prescription is 'constructive knowledge,' or the 'acquisition of sufficient information, which, if pursued, will lead to the true condition of things.' " *Id*. (citation omitted). "The ultimate issue in determining whether a plaintiff had constructive knowledge sufficient to commence a prescriptive period is the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct." *Id*.

*See also: Scott v. Mac-Re, LLC*, 16-224 (La. App. 3 Cir. 2/8/17), 211 So. 3d 693.

Similarly, in *Ellison v. Ellison*, 06-944 (La. App. 1 Cir. 3/23/07), 960 So. 2d 155, the court stated:

For the purposes of determining when the one-year period to bring a nullity action begins to run, the date of discovery of the fraud or ill practice is the date on which a plaintiff either knew, or should have known through the exercise of reasonable diligence, of facts sufficient to excite attention and put the plaintiff on guard and call for inquiry, and such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. *Ellison*, 960 So. 2d at 157.

Based on these cases and others, we conclude that La. C.C.P. art. 2004(B), as a matter of law, does not require actual knowledge that the actions of the lenders/assignees constituted fraud or ill practices to commence the one-year prescriptive period for an action to annul a judgment. Constructive knowledge of the facts, not knowledge of the legal consequences, are sufficient to commence the one-year prescriptive period for an action to annul a judgment.

Accordingly, we find that the trial court did not commit legal error when it concluded that prescription began to run on the plaintiffs' action to annul the 2016 judgment of foreclosure no later than when the plaintiffs had notice of the judgment of foreclosure and the impending sheriff's sale. Rather than investigate further by perhaps seeking legal advice, they simply attempted to thwart the proceedings by filing two bankruptcy claims whose sole purpose was to stop judicial proceedings. This assignment is without merit.

By their second assignment of error, the plaintiffs allege that the trial court committed manifest error by finding that the prescriptive period commenced on an indeterminate date earlier than what was supported by the law and the testimony. Ms. Bradford testified that she did not know that the 2008 judgment extinguished the Note, but only learned of these problems after consulting with an attorney less than 30 days before filing the nullity

12

action in 2020. The lenders and loan servicers who claimed to hold the Note committed fraud on her by leading her to believe the Note was still exigible, and she worked with the lenders and loan servicers for years prior to the May 6, 2016, judgment granted on a note that did not exist.

The plaintiffs argue that the trial court's insistence that they should have discovered the fraud and ill practices sooner than they did (no later than August 1, 2016) flies in the face of reality because the attorneys in the prior foreclosure actions did not discover it, nor did the clerk of court, the various judges and the sheriff, some of whom are trained in commercial paper.

After it heard the evidence and argument, the trial court concluded that the prescriptive period began to run for the action to annul, or for any related claim for any fraud or tort action, when suit was filed on August 1, 2016. It found that when they were sued, the plaintiffs were put on notice that they needed to "delve into what's going on." The court stated: "You're definitely put on notice as to, hold on, something is wrong, let me at least delve into it and find out what's going on because I've been foreclosed upon four different times." The court also noted that it could not believe that the plaintiffs did not know what was going on inasmuch as they filed bankruptcy twice to stop the sheriff's sale of the house, "and then claim, well, I didn't know anything was going on until I went to an attorney. I don't think that's the case."

Under the fourth category of *contra non valentem*, prescription does not run where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.[3]

---

[3] *Contra non valentem* is a judicially created exception to the general rule of prescription based on the civilian doctrine of *contra non valentem agere nulla currit*

13

*Carter v. Haygood*, 04-0646 (La. 1/19/05), 892 So. 2d 1261. Hence, prescription does not run against one who is ignorant of facts upon which his cause of action is based as long as such ignorance is not willful, negligent or unreasonable. *White v. West Carroll Hosp., Inc.*, 613 So. 2d 150 (La. 1992).

On the other hand, as we noted above, constructive knowledge sufficient to start the prescriptive period begins when the aggrieved party has knowledge of the facts sufficient to put him or her on notice of the need for further inquiry. The ultimate issue in determining whether a plaintiff had constructive knowledge sufficient to commence a prescriptive period is the reasonableness of the plaintiff's action or inaction in light of his education, intelligence, and the nature of the defendant's conduct. *Alexander v. Centanni, supra.*

After review, we conclude that the record does not support application of the fourth category of *contra non valentem,* and we find that the plaintiffs had constructive knowledge sufficient to commence the prescriptive period when they were served notice of the Fourth Action that resulted in the May 6, 2016, judgment. The plaintiffs' claim that they were unaware of the prior judgments against them is not credible, since they entered into a loan modification after the First Judgment was obtained against them. This process was repeated three more times after the First Judgment; yet, the

---

*praescriptio. Rajnowski v. St. Patrick's Hosp.*, 564 So. 2d 671 at 674 (La. 1990). The doctrine suspends the running of prescription in four situations:

      (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

      (2) Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;

      (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action;

      (4) Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

14

plaintiffs apparently never made any payments on the house after 2008. They contend that they were so confused by the several assignments of the loan that they simply did not know whom to pay. Thus, it appears that when the fourth foreclosure began and they were served with notice of the action, they assumed that once again they would simply ignore the proceedings, nothing would happen, and they could continue to live in the house without making payments. When the house came up for sheriff's sale, they twice thwarted those proceedings by filing bankruptcy petitions which halted the sheriff's sales. When the house was purchased at the sheriff's sale to one of the lenders, they still did nothing. It was not until after the property was sold to a third party, and we suspect at this time they were required to move out of the house, that they sought the advice of any attorney.

Accordingly, we find no manifest error in the trial court's finding that prescription began no later than when the plaintiffs were served with the petition that resulted in the May 6, 2016, judgment and foreclosure proceeding. This assignment is without merit.

Finally, by their third assignment of error, the plaintiffs allege that the trial court committed manifest error and legal error by not confirming the default judgments as requested.

Following the judgment on the exception of prescription, the plaintiffs sought to confirm a default judgment against three of the defendants who apparently did not file a peremptory exception and did not answer the petition, namely, Stanwich Mortgage Loan Trust Series 2013-7, Residential Funding Company, LLC, and Homecomings Financial, LLC. The judgment would cast these defendants, in solido, in judgment for $185,000.00 plus attorney fees and $498.00 costs, in solido.

The matter came up for confirmation on February 1, 2021. In its ruling the court found that the plaintiffs had not made a prima facie case entitling them to a default judgment confirmation. It said that the plaintiffs did not present any evidence as to what these particular defendants did or did not do to cause them damage. Additionally, the court alluded to the plaintiffs' testimony in the prescription proceedings and stated that he did not find that their testimony was credible and they had not made any payments on the note from 2008-2019 claiming that they did not know where to send the payment, which it found was contradictory to their testimony that they worked with the creditors. The confirmation and relief sought was denied.

In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment. *Arias v. Stolthaven New Orleans, L.L.C.*, 08-1111 (La. 5/5/09), 9 So. 3d 815. This determination is a factual one governed by the manifest error standard of review. *Id.*; *Alexander v. Rogers Home & Constr., Inc.*, 53,663 (La. App. 2 Cir. 1/13/21), 310 So. 3d 303.

Although the defendants are named in the petition, we agree with the trial court's conclusion regarding their role in the alleged fraud that would entitle the defendant to a judgment. We find no manifest error in the trial court's finding that the plaintiffs did not make a prima facie case entitling them to confirmation of a default judgment. This assignment is without merit.

**CONCLUSION**

For the foregoing reasons, the judgment sustaining the defendants' exception of prescription and dismissing the plaintiffs' petition is affirmed.

16

The ruling denying the plaintiffs' confirmation of a default judgment is affirmed.

Appellants are cast for costs of this appeal.

**AFFIRMED.**