**JOHN BREWSTER OHLE, III**    *     **NO. 2022-CA-0565**

**VERSUS**            *

                     **COURT OF APPEAL**

**DENNIS E. RINCK, JR. AND**    * 

**RIVERTOWN LAW CENTER,**       **FOURTH CIRCUIT**

**LLC**                  *

                     **STATE OF LOUISIANA**

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-06537, DIVISION "E"
Honorable Omar Mason, Judge

* * * * * *

**Judge Roland L. Belsome**

* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins,
Judge Paula A. Brown)

*JENKINS, J. CONCURS IN THE RESULT*

Corey E. Dunbar
PIVACH, PIVACH, HUFFT & THRIFFILEY, L.L.C.
8311 Highway 23
Suite 104
Belle Chasse, LA 70037

          COUNSEL FOR PLAINTIFF/APPELLANT

Gustave A. Fritchie, III
Gretchen F. Richards
IRWIN FRITCHIE URQUHART & MOORE  LLC
400 Poydras Street
Suite 2700
New Orleans, LA 70130

          COUNSEL FOR DEFENDANT/APPELLEE

                       **AFFIRMED**

                     **FEBRUARY 3, 2023**

This case involves legal malpractice, and the peremptive period for bringing such a claim against a defendant. Plaintiff-Appellant, John Ohle, appeals the February 15, 2022 judgment of the trial court, which granted Defendant-Appellees Dennis Rinck, Jr. and Rivertown Law Center, L.L.C.'s Amended Peremptory Exception of Peremption, dismissing all of Ohle's claims against them with prejudice. For the reasons that follow, this Court affirms.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

John Ohle, a lawyer in Illinois, was convicted by a federal court for tax evasion and conspiracy to defraud in 2008. Ohle was also later disbarred. During the events at issue in this case, Ohle was incarcerated in a federal penitentiary in Pensacola, Florida. While there, Ohle met Sean Alfortish, another disbarred and incarcerated lawyer, who told Ohle that a former associate of his, Dennis Rinck, could represent him in certain civil suits. Rinck does not deny that Ohle was referred to him by Alfortish. At issue in this case is Rinck's representation of Ohle in *Ecetra N. Ames v. John B. Ohle, III, J.P. Morgan Chase & Co., f/k/a Bank One Corporation, Douglas Steger and Keneth A. Brown*, which was pending in Civil District Court for the Parish of Orleans ("the Ames suit").

1

Rinck enrolled as Ohle's counsel in the Ames suit on June 1, 2012. Acting in this capacity, in August 2012 Rinck filed an Answer to the Ames suit, which also set forth Counter Claims, Cross Claims, and Third Party Demands. This pleading asserted reconventional demands against Ecetra Ames, cross claims against Douglas Steger and J.P. Morgan Chase & Co. f/k/a Bank One Corporation, and third-party demands against various other parties.[1] Ohle testified that this pleading was drafted entirely by Alfortish, though Rinck testified that it was his understanding that it was drafted by Ohle himself. It is undisputed, however, that the pleading was not authored by Rinck (in fact, Rinck himself testified that the only filings he personally authored in the case were the motion to enroll and motion to withdraw) and that, at most, Rinck was acting as an editor who would file into court the pleadings sent to him. Another witness, Jamie Perdigao (another incarcerated former lawyer from Louisiana), testified that Ohle and Alfortish were working together on several cases in which Ohle was a party, but also that this particular pleading was written in Alfortish's hand prior to being typed and emailed to Rinck for filing.

In November and December of 2012, all of the parties against whom Ohle had asserted claims (in his reconventional demands, cross claims, and third party demands) filed exceptions to said claims, variously arguing: insufficiency of citation, insufficiency of service of process, vagueness and ambiguity, improper cumulation of actions, improper venue, *forum non conveniens*, lack of personal jurisdiction, no cause of action, no right of action, and prescription. The various

---

[1] Named as third-party defendants were: Banc One Investment Advisors Corporation; Deutsche Bank A.G., Deutsche Bank Securities, Inc. d/b/a Deutsche Bank Alex Brown, a division of Deutsche Bank Securities, Inc.; Societe General; SG Cowen Securities Corporation; Samuel Rosenberg; Edward Doherty; Brent Slade; David Parse; David Kundert; Peter Atwater; Richard A. Rogoff; John Kramer; Mayer Brown; Thomas Durkin; Foley & Lardner; and John Palmer.

exceptions were all set for a hearing scheduled for January 11, 2013 ("the exceptions hearing").

However, it appears from the record that around this same time, the professional relationship between Ohle and Rinck had deteriorated, and that Rinck wished to withdraw as counsel due to a fee dispute[2] and Ohle's taxes on his time. In an email communication dated December 3, 2012, Rinck advised Ohle that "Rivertown Law Center will release the entire files of all your cases to any attorney(s) of your choosing. We will do nothing further of any nature." Further, in an email communication to Rinck dated February 8, 2013, Ohle references Rinck's December communication, and also discussed substitution of new counsel for Rinck (a Mr. Hiram Eastland). However, despite the foregoing, Rinck remained Ohle's counsel of record in the Ames suit throughout December 2012, having failed to file a motion to withdraw from the Ames suit. In another email exchange between the two, dated February 6, 2013, Rinck described his failure to officially withdraw from the case as due to Ohle's ongoing search for replacement counsel.

On January 9, 2013, however, Rinck filed an *ex parte* motion to withdraw from the Ames suit. In violation of his professional responsibilities and local court rules, Rinck filed this motion despite the fact that the exceptions hearing was scheduled to take place a mere two days later, on January 11, 2013.[3] Due to the perfunctory nature of Rinck's motion to withdraw, the presiding judge in the Ames suit did not receive Rinck's motion until January 14, 2013. Therefore, Rinck remained counsel of record at the time of the exceptions hearing on January 11,

---

[2] The parties never entered a written agreement regarding Rinck's representation and fee. Ohle claims they entered an oral contract for Rinck's representation on a contingency fee basis, but Rinck claims they never reached an agreement at all.

[3] Rule 9.13(e) of the Local Rules for Civil Proceedings in District Court forbid *ex parte* withdrawal when there is a hearing or trial scheduled.

2013. It is undisputed that Rinck failed to appear for the hearing and that, as a direct result, the court granted all of the exceptions filed by the opposing parties. Noting that Ohle's counsel was "Absent but on Notice", the judgments rendered by the trial court granted *in toto* all of the exceptions filed by the various defendants (defendants-in-reconvention or third party defendants), and dismissed Ohle's claims against them.

Ohle testified that he never received notice of the exceptions being set for hearing, nor of Rinck's *ex parte* motion to withdraw. In fact, Ohle claims that prior to February 2013, he was not even aware that any of the parties against whom he had asserted claims in the Ames suit had filed exceptions at all. Ohle alleges that Rinck failed to keep him informed, and argues that such an omission constitutes fraud. Rinck denies this allegation, and testified that he informed Ohle of all of the filings in the case, including the exceptions and notice of the exceptions hearing. However, Rinck was unable to produce documentary evidence in support of this assertion. On the other hand, Ohle does not deny that he did receive notice (from the court hearing the Ames suit) of some of the resulting judgments granting the exceptions. This fact is also evident from a *pro se* filing by Ohle in the Ames suit, in which he moved for leave for additional time to file a motion for new trial and/or a motion for reconsideration of the judgments, which he filed on February 11, 2013. In the motion, Ohle states that he learned of the exceptions hearing as well as Rinck's failure to appear on or about January 28, 2013, when he received notice of the judgments rendered in favor of Thomas Durkin, Mayer Brown, David Parse, Deutsche Bank AG, Deutsche Bank Securities, Inc., Societe Generale, Samuel Rosenburg, and Cowan & Company f/k/a SG Cowen Securities Corporation.

4

However, Ohle testified that he never received the notice of judgment rendered in favor of Ecetra Ames, nor that rendered in favor of J.P. Morgan Chase ("the Ames and J.P. Morgan Chase judgments"). Although the notices of those two judgments list Ohle's correct address in the Pensacola prison (as did those which Ohle admits having received), it is alleged by Ohle that the Ames and J.P. Morgan Chase judgments were "intercepted" by Alfortish at the prison. Further, Ohle alleges that he was reassured by Alfortish that the dismissals (those of which Ohle was aware) were procedural in nature, and could and would be remedied. Ohle testified that he did not learn of the judgments dismissing his claims against Ecetra Ames and J.P. Morgan Chase until July 19, 2013, when his file was retrieved from Rivertown Law Center by his new attorney, Hiram Eastland.

On July 7, 2014, Ohle filed a Petition for Damages against Rinck and Rivertown Law Center. On October 15, 2014, Ohle filed an Amended Petition, in which he alleged that Rinck's failure to keep him informed constitute fraud and, further, that Sean Alfortish was acting under the apparent authority of Rinck when he too committed fraud by intercepting the Ames and J.P. Morgan Chase judgments and reassuring Ohle that the other dismissals could be remedied. On November 22, 2021, Rinck filed an Amended Exception of Peremption, which was set for a hearing on February 4, 2022, Judge Omar Mason presiding. Testimony and evidence was presented at the hearing, and at its conclusion Judge Mason granted the exception and dismissed Ohle's claims with prejudice. Specifically, the trial court found that Ohle was on notice of his malpractice claim as early as February 2013, referencing the previously discussed email exchanges, which mentioned Rinck's failure to appear at the exceptions hearing and the possibility of

malpractice. Judge Mason issued a written judgment on February 15, 2013, and Ohle's timely devolutive appeal followed.

## LAW AND ANALYSIS

### *Standard of Review*

As recently reiterated by this Court in *Hawkins v. Liskow and Lewis, APLC*, 2021-0198, p. 3 (La. App. 4 Cir. 3/11/22), 336 So.3d 534, 536:

> A peremptory exception generally raises a purely legal question. *Wells Fargo Fin. La., Inc. v. Galloway*, 2017-0413, p. 7 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 799-800. When, as here, evidence is introduced at the hearing on a peremptory exception of peremption, the trial court's findings of fact are reviewed under the manifest error/clearly wrong standard of review. *Lomont v. Bennett*, 2014-2483, p. 8 (La. 6/30/15), 172 So.3d 620, 627 (citing *Rando v. Anco Insulations Inc.*, 2008-1163, p. 20 (La. 5/22/09), 16 So.3d 1065, 1082). If those findings are reasonable in light of the record reviewed in its entirety, an appellate court cannot reverse even though it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

In this case, the hearing of Rinck's peremptory exception of peremption included the introduction of both documentary evidence as well as the testimony of Ohle, Rinck, and a third party (Perdigao). Therefore, we will not set aside the trial court's findings unless they are manifestly erroneous or clearly wrong.

### *Peremption of a Legal Malpractice Action*

The issue before this Court is not whether Rinck's actions and omissions constitute malpractice; rather, the question posed to this Court is whether Ohle brought his action within the time he was required to do so, pursuant to La. R.S. 9:5605, which governs the timing for a plaintiff to bring an action for malpractice against their attorney. That statute provides, in pertinent part:

> A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination

6

authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue **within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered** *or should have been discovered*; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

* * * * * * *

E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

Thus, La. R.S. 9:5605 provides two peremptive[4] periods for a plaintiff to bring a malpractice claim against an attorney: (1) a one-year period which begins to run from actual or constructive discovery of the act/omission/neglect constituting malpractice; and (2) a three-year period from the act/omission/neglect, regardless of when it was or should have been discovered.

In the case *sub judice*, the parties disagree as to when the peremptive period began to run. Ohle argues that the applicable date is July 19, 2013, which is when he received his legal file from Rinck and learned of the judgments dismissing his claims against Ames and J.P. Morgan Chase, and of Rinck's failure to keep him informed. Rinck, on the other hand, argues that the applicable date is February 4, 2013, pointing to an email from Ohle to Rinck bearing that date (hereinafter referred to as "the February 4, 2013 email"), in which Ohle stated that "I learned today that a hearing was held on January 11, 2013 on the various Motions to

---

[4] "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. C.C. art. 3458.

Dismiss [i.e. exceptions]. No one from Rivertown appeared. The judge has thrown out all causes of action due to the failure to respond and/or appear."[5]

Thus, it is not in dispute that Ohle knew in February 2013 that Rinck had failed to appear for the exceptions hearing and that, as a result, several exceptions filed by opposing parties in the Ames suit had been granted, dismissing Ohle's claims against them. That much was memorialized in the February 4, 2013 email. As to those judgments, therefore, there can be little doubt that Ohle's malpractice claim, filed July 7, 2014, was perempted. However, Ohle argues that he did not learn until the day he received his legal file (July 19, 2013) that two additional defendants had also had their exceptions granted and his claims against them dismissed: Ecetra Ames and J.P. Morgan Chase.

According to Ohle, his ignorance of the Ames and J.P. Morgan Chase judgments were a result of fraud, both on the part of Rinck (in failing to keep him informed) and Alfortish (in "intercepting" the judgments, allegedly acting as an agent for Rinck). Regarding the latter, the trial court recognized that "the parties agree that Mr. Alfortish has apparently made some false representations to Mr. Ohle"; however, the trial court found that any fraud on Alfortish's part was not sufficiently proved (or even alleged) to be attributable to Rinck. This finding is the subject of Ohle's third assignments of error. Ohle argues that Alfortish was acting as an agent for Rinck, pointing to: Rinck's former association with Alfortish; Rinck's continued use of Alfrotish's Fedex and Office Depot accounts; and the alleged fact that Alfortish was the author of Ohle's Answer, Counter Claims, Cross

---

[5] Ohle filed his legal malpractice action against Rinck on July 7, 2014. Thus it is not in dispute that Ohle filed his claim within three years, regardless of whether the period began to run in February or July of 2013. Thus, the three-year peremptive period (which runs regardless of when the malpractice is discovered) is not at issue in this case.

Claims, and Third Party Demands (though Rinck claims to be unaware of Alfortish's authorship of the pleading, and testified that it was his understanding that Ohle himself drafted it).

However, Louisiana law has long held that to be liable for the acts of an alleged agent, there must be some manifestation by the principle empowering the agent to act on their behalf. "In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person." *Jones v. Boot Bar & Grill*, 2022-0154, p. 28 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 986–87 (quoting *Grabowski v. Smith & Nephew, Inc.*, 2014-0433, 2013-1409, p. 22 (La. App. 3 Cir. 10/1/14), 149 So.3d 899, 913); *see also Tedesco v. Gentry Dev., Inc.*, 540 So.2d 960, 963 (La. 1989).

In the case *sub judice*, Rinck adamantly denies that he empowered Alfortish to act as an agent on his behalf, whether through a manifestation to Alfortish (conveying actual authority) or through a manifestation to Ohle (conveying apparent authority). Ohle was not able to offer proof of any such manifestation by Rinck,[6] but rather points to a letter *from* Alfortish *to* Rinck, in which Alfortish refers to Ohle as their shared client. However, as previously noted, the doctrine of apparent authority requires a manifestation *from the principle* to the party attempting to establish apparent authority. "Further, apparent authority operates only when it is reasonable for the third person to believe the agent is authorized and the third person actually believes this." *Id.* Here, it is questionable whether

_____

[6] In Ohle's fourth assignment of error, he argues that the trial court erred in excluding as hearsay portions of the testimony of Jamie Perdigao, and a post-trial affidavit from Perdigao, which purportedly evidenced manifestations from Rinck to Alfortish conveying actual authority for Alfortish's actions in concealing the Ames and J.P. Morgan Chase judgments from Ohle. However, Ohle made no attempt to proffer the excluded evidence for purposes of appeal, and therefore this assignment of error lacks merit.

Ohle would be reasonable in believing that Rinck had authorized Alfortish (a disbarred and incarcerated lawyer) to act on his behalf. Thus, this Court finds no clear or manifest error in the trial court's finding that any fraud perpetrated on Ohle by Alfortish was not imputable to Rinck.

In his first assignment of error, Ohle also argues that the trial court erred by failing to acknowledge Rinck's fraud in failing to inform Ohle of the exceptions and resulting judgments, withholding his legal file, and failing to provide him notice of his *ex parte* motion to withdraw filed days before the exceptions hearing. Rinck's testimony disputes these alleged omissions, but he was unable to produce documentary evidence.[7] This Court recognizes that fraud results from a party's silence when they have an affirmative duty to speak, such as Rinck's duty to keep his client informed. *Lomont v. Bennett*, 2014-2483, p. 11 (La. 6/30/15), 172 So.3d 620, 629. However, such fraud does not materially change this Court's analysis. In *Lomont v. Bennett*, our Supreme Court held that "in cases where fraud is established pursuant to La. R.S. 9:5605(E), a legal malpractice claim is governed by the one-year prescriptive period." *Lomont*, 2014-2483, p. 24, 172 So.3d at 636. Likewise, in *Miralda v. Gonzalez*, this Court held that "[t]he fraud exception under La. R.S. 9:5605(E) does not suspend the running of prescription indefinitely; rather, it lifts the three year peremptive period, giving the claimant one year from the date of the discovery of the actions which allegedly constitute malpractice." 2014-0888, p. 26 (La. App. 4 Cir. 2/4/15), 160 So.3d 998, 1014.

---

[7] In Ohle's second assignment of error, he argues that the trial court erred in relying on Rinck's uncorroborated testimony. Initially, it is unclear whether the trial court's ultimate judgment "relied" on Rinck's testimony, as opposed to other evidence presented at the hearing showing that Ohle learned or should have learned of Rinck's omissions more than a year before filing suit, which was the question before the trial court. Additionally, a trial court sits as the trier of fact and is in the best position to evaluate credibility, and such determinations "must be given great deference on appeal." *In re Interdiction of Gambino*, 2021-00267, p. 2 (La. 4/20/21), 313 So.3d 1239, 1240.

Thus, the relevant inquiry for peremption purposes is when Rinck's malpractice and/or fraud were or should have been discovered by Ohle, beginning the running of the one-year peremptive period. The "date of discovery" was defined by the Supreme Court in *Lomont* as the "date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant." *Lomont*, 2014-2483, p. 26, 172 So.3d at 638 (quoting *Jenkins v. Starns*, 2011-1170, p. 15 (La. 1/24/12), 85 So.3d 612, 621-22. "Constructive knowledge" generally refers to the imputation of knowledge which a party *should* be aware of, when their failure to learn of such facts is unreasonable. In *Teague v. St. Paul Fire & Marine Ins. Co.*, our Supreme Court found constructive knowledge to be triggered by "whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead . . . [t]he ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct." 2007-1384, p. 13-14 (La. 2/1/08), 974 So.2d 1266, 1276-77.

As previously noted, it is undisputed that Ohle learned as early as February 2013 that: (1) exceptions had been filed to his Counter Claims, Cross Claims, and Third Party Demands in the Ames suit; (2) that the exceptions hearing had been set and already taken place; (3) that Rinck had failed to appear for the hearing; and (4) that as a result of Rinck's absence from the hearing, the court had granted exceptions and dismissed some of Ohle's claims. That much is clear from the

February 4, 2013 email Ohle sent to Rinck complaining of the adverse judgments and requesting Rinck to take remedial action.

Additionally, this Court has identified three factors to be evaluated on a case-by-case basis when determining whether a plaintiff reasonably should have discovered their cause of action for malpractice, two of which are particularly applicable to the case *sub judice*:

> The first factor is the plaintiff's statements reflecting his dissatisfaction with, or suspicions of, the attorney's actions, and whether the plaintiff investigated his accusations or suspicions. . . . The second factor is the plaintiff's hiring of another attorney. . . . The third factor is the issuance of an adverse judicial ruling.

*Miralda*, 2014-0888, p. 21, 160 So.3d at 1011. In this case, the first and third factors tend to show that Ohle had constructive knowledge of his malpractice claims as early as February 2013, as appropriately discussed and applied by the trial court in its oral ruling. Regarding the first factor, the record contains numerous statements from Ohle dating from that time (the February emails previously discussed), expressing his dissatisfaction with Rinck's representation. In fact, these emails go so far as to describe Rinck's handling of the case as presenting "professional liability issues", as well as specifically noting Rinck's failure to attend the exceptions hearing and the resulting dismissals.

Regarding the third factor, adverse judgments were issued against Ohle in January and February 2013, several of which Ohle does not dispute having received. However, Ohle argues to this Court that the peremptive period must run separately for acts of malpractice of which he was aware, and for those of which he was not. While this Court does not disagree with that general proposition, the argument misses the relevant inquiry: whether, as a result of learning of the dismissals of some opposing parties, a reasonable person would be put "on guard"

12

and be called upon to make an inquiry. *Teague*, 2007-1384, p. 13-14, 974 So.2d at 1276. "Such notice is tantamount to knowledge or notice of *everything to which a reasonable inquiry may lead*." *Id.* (emphasis added). The record reflects that this issue was squarely considered by the trial court; and while the issue is a close one, this Court finds no manifest error in the trial court's finding that Ohle was on constructive notice of *all* of his causes of action when he learned that Rinck had missed the exceptions hearing and that the court hearing the Ames suit had dismissed several parties. On the particular facts of this case, it is not erroneous to conclude that a reasonable inquiry at that time could have revealed that other exceptions had been filed, heard, and granted at the same hearing – particularly when the plaintiff in question was once an attorney. *Id.* at p. 14, 974 So.2d at 1276 (recognizing that a plaintiff's education and intelligence are relevant to the reasonableness of their action or inaction).

## CONCLUSION

After a thorough review of the record, we find no manifest error in the trial court's May 16, 2022 judgment, maintaining the exception of peremption and dismissing all of Ohle's claims, with prejudice. Accordingly, we affirm.

**AFFIRMED**